Mr. Chief Justice Sharkey
delivered the opinion of the court.
This was an action of ejectment brought by the defendant in error against the plaintiff. The plaintiff below claimed title under two Spanish grants legally and fully executed; one to Jane Rumsey, for 2000 arpens ofland, dated the 8th of October, 1787, and the other to Ezekiel Forman, professing to be for the same land granted to Jane Rumsey, bearing date the 1st of June, 1702, for 2000 arpens of land. The defendant below claimed title under a patent from the United States,- issued in 1823. The defendants only claim title to part of the land conveyed by the Spanish grants; or at least the quantity in controversy is but about one hundred and eighty acres. A bill of exceptions was taken on the trial, on which errors are assigned, six in number.
First. It is said the court erred in admitting the paper purporting to be a certificate of confirmation by the Board of commissioners west of Pearl River, to Lacy Rumsey, for 2000 arpens of land. The certificate of confirmation is in due form, but the objection is, that it was but a copy, and no proof was made of the loss of the original. To this objection several answers may be given. It does not appear that there ever was an original, other than that which is spread upon the record of the proceedings of the commissioners. But the statute declares in express words that copies of the records appertaining and belonging to the land-offices of the United States established in this state, duly authenticated by the proper officer having charge of the said records, shall be admitted as evidence in suits depending in this state, in all cases where the originals or sworn copies could be admitted, without further or other proof of such record. How. and Hutch. Dig. 605, sec. 24. The register certified that the certificate of confirmation was truly copied from the records in his office. This certificate then, was properly admitted.
Secondly it is assigned as error that the court improperly admitted the release or quit-claim deed of Lacy Rumsey to William Gordon Forman, and the indorsements thereon, to be read to the jury. Several objections are made to this instrument It is insisted that it was not authenticated in the proper manner to make it evidence. It was executed on the 8th of December, *153 1806, in the presence of two. witnesses. On the 30th of November, 1807, it was proven before Thomas Rodney, a judge of the superior court of the Mississippi territory, by one of the subscribing witnesses. The law as it then stood authorized the proof or acknowledgment of deeds to be made or taken by a judge of the superior court, and further provided that every deed so acknowledged or proven and certified, should be received in evidence. A further provision entitled deeds so acknowledged or proven, to be admitted to record; and deeds not recorded within twelve calendar months were declared void as against a subsequent purchaser or mortgagee without notice, but the statute contains no other restriction as to recording. The certificate of the judge on this deed, conforms to the provisions of the statute, and of course the deed was free from objections on this ground. Toulman’s Dig. 243. But this deed was not recorded until the 10th of March, 1841 and it is insisted that it was therefore void as against the defendant, who is a subsequent purchaser, without notice, from the United States. As between these parties no registration was necessary. The registry act only avoids a prior unregistered deed in favor of a subsequent grantee from the same grantor. But the registration is of no consequence as between parties who derive their titles from different sources. The mischief which the law was intended to prevent, cannot in such cases exist. • When the statute declares that unregistered deeds shall be void as to subsequent purchasers and creditors without notice, it can only mean to prefer a purchaser who has taken a conveyance from the same person who executed the unregistered deed. But the title under the Spanish government was recorded in the proper office. This deed then was as valid without recording, as to this defendant, as it would have been with it. It is also insisted that this was a mere quit-claim or release, and therefore insufficient to pass an estate. This is an objection which applies to its legal effect, rather than to its competency, or admissibility. It is admitted that the words “remise, release, and quit-claim,” used in the deed, may be sufficient to perfect a title in one having claim of title. As a link, then, in the chain of title, it was proper evi *154 dence. Its legal effect may more properly be considered under another head. An instrument is not necessarily to be rejected because it does not amount to a sufficient title to pass the entire estate. If it constitute a constituent part of title, it must be admitted. Its effect may depend upon its connection with other instruments. It may be insufficient in itself, to prove enough, and still it may be competent proof, when applied in its proper connection.
Thirdly, that the court erred in admitting in evidence the paper purporting to be a power of attorney from T. B. Barclay, G. P. Barclay, and T. M. Barclay, to Robert Lyons, and the in-dorsements thereon; and in excluding the proof offered by the plaintiff in error to show that according to the custom of London, the acknowledgments, as certified thereon, were not in due form, ■or legal. It seems that two of the constituents Avho executed the power of attorney, resided in London, and the other in Liverpool. The power was executed in presence of witnesses, who proved the execution, by two of the Barclays, before the mayor of London. Thomas B. Barclay resided in Liverpool, and there signed the power of attorney in presence of witness; the proof as to his execution, was made before the mayor of Liverpool, by a subscribing witness. The certificate of the lord mayor of London, is made under the official seal and signature of the mayor, but it is said the certificate of the mayor of Liverpool is defective in this, that it is not subscribed by that officer, but by the town clerk. It bears however the impress of the corporate seal, and purports, by beginning with the name of the mayor, to be his official certificate. The affidavit subscribed by the witness bears also the signature of the mayor, who administered the oath; it is the separate certificate that the witness appeared and deposed to the truth of the matters contained in the affidavit, which was signed by the town clerk by order of the mayor, and sealed with the corporate seal. The corporate seal must be regarded as imparting the requisite authenticity, and as proof that its character is truly stated in the instrument itself. These -certificates are not of themselves evidence, but made so by stat„ute, which declares that where the parties or witnesses to a deed, *155 reside in a foreign kingdom, state, nation or colony, the acknowledgment or proof made before any court of law, or mayor or other chief magistrate of any city, borough or corporation, of such kingdom, state, nation or colony in which the said party or witnesses reside, certified by the said court, mayor, or chief magistrate, in the manner such acts are usually authenticated by them or him, shall be as good and effectual as if it had been made before, and certified by one of the judges of the supreme court of this state. This statute appoints such foreign officers as are therein designated, as certifying officers, and it adopts the foreign law or custom in regard to the form of the certificate. The certificate of the mayor of a foreign city, is prima facie evidence that the certificate itself is in due form, or in the usual form of authenticating such acts, but it is not conclusive. 3 Phil. Ev. 1249. The certificate of a state officer is not of itself conclusive evidence that it is in due form, but may be shown to be defective, and whether defective or not is a question of law, because the manner of certifying is regulated by a public law which the courts of the state are bound to notice. But the question whether the certificate of a foreign officer conforms to the foreign law or custom, is a question of fact, because the manner of certifying is regulated by the foreign law, of which our courts are not bound to take notice, but which must be proven as a question of fact. It is only when the certificates are made in the usual manner of certifying that they become evidence here; the certificate itself is prima facie evidence that it is in due form, but the party who objects to its admissibility, may rebut this presranption by showing that it is not in the usual or legal manner of certifying. The question is then, how, or by what evidence may the objecting party prove that the certificate is imperfect ? If the mode of certifying be regulated by law, then an authenticated copy of the foreign law must be exhibited to the court, in order that it may instruct the jury what the law is. If such a copy cannot be procured, then inferior evidence may be resorted to. The general principle here prevails, that the best evidence which the nature of the thing admits of, must be produced. Story’s Confl. of Laws, 2d ed. 527 — 529. By the *156 bill of exceptions it seems that the defendant in the court below offered to prove that the certificate of the mayor of London was not authenticated according to the usages of the city of London, but how, or by what proof the defendant offered to- establish this fact, does not appear. We cannot say that the court erred in not permitting a party to offer proof of a particular fact, which can only he proved in a certain way, unless it also appears that the proof excluded was pertinent to establish the fact which the party desired to establish. It may be that parol proof was offered. This would not do, except in connection with the fact that the mayor of London is not governed by any law in making his certificates. We conclude then that the certificates were properly admitted, and that no error is shown to have occurred in excluding the proof offered to impeach them.
Fourthly, it is assigned as error, that the court admitted a paper purporting to be a plat and survey of the land contained in the certificate of confirmation, certified hy Yolney E. Howard as the surveyor-general of lands south of Tennessee. We have before shown that the certificates of the officers of the several land offices established in this state, are made evidence by the statute. This certificate is by the surveyor-general, and within the statute. One of the objections to this certificate is that the map or plat differs materially from the map of the same land in the register’s office. By the act of congress it was made the duty of the surveyor of lands south of the state of Tennessee to cause a survey to be made of all private land claims, and also of all public lands, and to transmit to the register’s office general and particular plats of all the lands surveyed. Act of congress of the 3d of March, 1803. This we must suppose was done. The map so transmitted to the register’s office, cannot he better than that retained by the surveyor-general. The statute makes copies of both evidence, and if there be a difference, it cannot be reconciled by making one superior to the other. Mistakes in the maps can only be corrected by actual surveys. Another objection to this certificate is that it is without date, and hence it is said that it cannot be known that Howard was surveyor-general when the certificate was given. He certifies as surveyor-general, *157 and it is his official character which makes the certificate evidence. We must presume that all the certificate is true, until the contrary is shown.
Fifthly, it is said the court erred in giving the several instructions asked by the plaintiff’s counsel. The charges given were ten in number, and we shall only notice such as may seem to require comment. The first charge given was that the plaintiff had shown a complete legal title which emanated from the Spanish government by two grants; one to Jane Rumsey, the other to Ezekial Forman, and if the land in controversy was embraced by either of the grants, the plaintiff was entitled to recover, unless the defendant held under a superior title. Under this charge we may properly notice several objections made to the plaintiffs title, in the arguments of counsel. It is insisted that the Spanish grant to Forman conveyed no title, because it recited that the same land had been previously granted to Jane Rumsey. As an abstract proposition, it is undoubtedly true that a grantor, who disposes of land by a valid operative deed, cannot subsequently dispose of the same land by a valid operative deed to a different person. There is nothing on which such a deed can operate, since the entire estate passed from the grantor by the first conveyance. But if the original conveyance were inherently defective, then of course the second would pass the estate. These two titles seem now to be centred in the same individual. They are not arrayed against each other, and we are not called on to say which was the superior grant. To the Rumsey grant, in its inception, there is no objection, and if the plaintiff can trace his title regularly back to that grant, it must be sufficient. The chain of title is complete with one exception, but that, it is insisted, is a defect which cannot be overcome. Lacy Rumsey conveyed by release, or quit-claim deed, to William Gordon Forman, on the 18th December, 1806. The board of commissioners had granted a certificate of confirmation to Lacy Rumsey, as the legal representative' of Jane Rumsey, on the 23d of July, 1806, in virtue of the Spanish patent to Jane Rumsey. The plaintiff, through regular mesne conveyances, derives title from William Gordon Forman. *158 The defect in the chain of title is said to consist in this: that no estate passed by the release, or quit-claim deed, of Lacy Rumsey to William Gordon Forman. To sustain this position it is assumed that Forman was not in possession, and it is argued that a release can only confer title to one who is in possession. A release, it is true, does not pass the right to land, of which another person is in the actual visible possession claiming a right. 12 Mass. R. 339; 11 Ibid. 222. A release, however, may be used as a conveyance of the estate to one in possession ; or as a mean of transferring or enlarging an estate by giving some new interest. “ Arid so/7 says one author, “ it doth sometimes perfect an estate that was imperfect and defeasible before, and enure by way of entry and feoffment.” Sheppard’s Touchstone, 320 et seq. So it is said lands, tenements, and he-reditaments may be given and transferred by way of release. Ibid. 321. And it seems that any interest in the person to whom the release is made, either by possession, by deed or in law, in his own or another’s right, will be a sufficient foundation for the release to stand upon. Ibid. 323. Even if he be tenant at will it seems to be sufficient. But we find, from high authority, that a vested interest, without an actual possession, will be sufficient to sustain a release. Cruise’s Dig. title Lease & Release. In a country abounding in wild land, a deed or grant may be regarded as a constructive possession, which was the case in this country whén these titles originated. If William G. Forman, at the date of Rumsey’s release to him, had actual possession, the title passed to him by the release. Or if he had constructive possession by virtue of the grant to his testator, it would seem to be sufficient. We have said that in order to avoid the release, counsel had assumed the position that Forman was not in possession. In this remark we are justified by the record, which furnishes no proof of any such fact; and we may advert to the history of the title, for the purpose of showing that it even favors a presumption the other way. We have before us extracts from the proceedings of the board of commissioners, from which it seems, that in March, 1804, William G. Forman, as the executor of David Forman, presented his claim to be *159 confirmed in the title under the Spanish grant to Ezekiel For-man. The petition was before the board at various times, from March, 1804, up to 1806, when the certificate of confirmation issued. Forman produced to the board the original Spanish patent to Ezekial Forman as the foundation of his claim, and also other title papers and evidence. All this transpired at Washington, in the immediate vicinity of the land. But in addition to this, we find Lacy Rumsey, as a citizen of Jefferson county, which is at some distance from the land, conveying by release to William G. Forman, on the 18th of December, 1806, shortly after the legal representatives of David Forman had been confirmed in their title. In addition to these facts, it appears that Salkeld and the Barclays had for many years a plantation in cultivation on part of the Rumsey and Forman grants, and that the plaintiff has been in possession ever since he received a conveyance, with this qualification, that part of the land was, and is still, uninclosed. If Salkeld had a plantation on the land, it was probably as early as 1811, which was long before the defendant’s ancestor acquired title. Nor is there any proof of an adverse possession, until 1832, which was after the plaintiff had acquired title. At the time of the trial, the deed of release was thirty-five years old, an age sufficient to draw to its support the favorable presumptions of law. It was said by Chief Justice Marshall, that in favor of long possession, in favor of strong apparent equity, much may be presumed. 7 Wheat. 546. In the case of Jackson v. Lamb, 7 Cow. 431, it was decided that a mutilated lease, in connection with proof of long possession, might be regarded as sufficient to justify the presumption that a release had been executed, as the lease seemed to have been drawn with a view to a conveyance by release. It is not uncommon, from proof of long possession, to presume that the possession was held under a deed. Jackson v. Lunn, 3 Johns. Cases, 109; 2 Notes to Phil. Ev. 364, et seq. So on proof of long possession, and all other things regularly made out, the title shall not fail for a single defective item. Ibid. It is true that where length of possession is relied on as furnishing a presumption of title, it must be established by unequivocal *160 proof. But such strictness cannot be requisite when a deed is proven which is to rest upon possession. The principle is, that proof of one ingredient of title will draw to it another. Here the release is well proven, and lacks nothing but proof of possession, or of a lease at the time it was executed to support it. This defect is supplied by a presumption, based upon the possession of the release, as far back as there is any evidence of possession. It is not, moreover, contended that there was any adverse possession until 1823, and no actual possession until 1832, when the present plaintiff was in possession under his title. His title to the whole and possession of part, was possession of the whole. Hammond v. Ridgely. 5 Har. & John. 215, 264. But it would seem, from the cases referred to in 11 & 12 Mass. R. that in order to defeat a release, there should be proof of an actual adverse possession, under a claim of right. There is no such proof in this case. It is the case of one seeking to avoid a title by release, when the releasee was in possession long before the defendant acquired title, and who, for anything that appears to the contrary, was in possession when the release was made. If the validity ef the release rested alone on presumption of possession, it might be a question proper for a jury. But it is fortified by the absence of all proof of an adverse possession, and by the additional consideration that the great objection to it in the court below, was as to its authenticity. By the bill of exceptions it seems that the plaintiff read the release and certificates thereon, “ without any further proof, to the admission of which in evidence the defendant by his counsel objected.” From this language we must understand that the objection was intended to apply only to the omission to introduce further proof of the execution of the instrument. The argument as to the effect of a release as a conveyance has been much pressed in this court, and we have endeavored to meet it by showing that the facts in the case were such as would have obviated the objection, even if it had been pressed to the court below. The remaining charges do not seem to us to require special comment.
For the defendant, the court was requested to charge the *161 jury that if the plaintiff took his conveyance when defendant held adversely under a patent, the deed was void. It is insisted that the court erred in refusing this charge, because a deed so taken would be void for champerty, at least to the extent of the land held adversely, and the case of Levitt v. Poor, 11 Mass. R. 549, is relied on. That was a contract clearly within the common law doctrine of champerty, and therefore void. We might declare a similar contract void for the same reason. Champerty is an offence at the common law, and no contract which contains within itself a violation of law can be valid. But it is to be noted that on this subject we are governed by the common law only. We have no such statute as that of the 32 of Hen. 8, ch. 9, which prohibited the sale or purchase of land, unless the vendor had received the profits thereof for one year next preceding the sale. In order, then, to avoid the contract, the common law offence of champerty must be complete, for it is because of the offence that the sale is void ; and if there be no offence, the sale is valid. Parties may act innocently in consequence of an entire ignorance of the adverse possession. For example, one who buys a section of land without knowing precisely the metes and bounds, if, when the lines are ascertained, it should turn out that part of the land is in possession of an adversary claimant, is not guilty of champerty. The common law has in view the prevention of a great mischief, and as the case put does not fall within the evil, the law does not apply; especially in this country in which there is so much land uncultivated, and which is held only by constructive possession. It is not an uncommon thing for purchasers to contract for large quantities of land, without ever having seen it. If champerty is committed by innocently buying a tract of land, a small quantity of which is claimed by another, the offence is quite common. To constitute champerty it is necessary to prove something more than that part of the land was claimed by another. The purchaser should have some knowledge of the adverse claim. This seems to accord with the view that was taken of the subject in the case referred to. It seems that all the land in dispute was in forest when the plaintiff purchased ; and there is *162 no proof that he knew anything of the defendant’s claim. There is then no ground for holding the deed void for any part of the land conveyed.
In conclusion we may remark that both titles seem to be perfect, and that this is one of those cases of conflict of boundary which has originated out of the imperfect manner in which the orignal surveys of the country were made. But the bill of exceptions does not present the question of boundary in such a manner as to enable us to perceive where the difficulty lies. If a survey was made under an order of court, it is not brought up. The efforts of the defendant’s counsel seem to have been directed against the plaintiff’s title, rather than against his boundary.
The judgment must be affirmed.