## HALL et al., Syndics *v.* WOODS.

Where one who purchased, in his own name, slaves sold at a judicial sale, applies to the
Probate Court, alleging that he bought them as an investment of funds of minors to whom
he was under-tutor, and praying for a family-meeting to consider the propriety of adopt-
ing and confirming the purchase on behalf of the minors, and they recommend its adoption,
and that the under-tutor be authorized to execute his notes for the credit part of the sale,
and the deliberations are homologated and the under-tutor authorized to execute the acts,
but, on the next day, be subscribes notes and consents to a mortgage in his own name,
without mentioning these proceedings, the minors will not be bound thereby. *Per Curiam:*
The purchase having been made by the party in his own name, there was no contract to
ratify; the alleged ratification was a sale from the under-tutor to the minors; and article
1788 C. C. is inapplicable to such a case.

A minor will not be bound by a purchase, though ratified by a family-meeting whose delibe-
rations have been homologated by the court, where the purchase exceeds his available
means, and instead of being an investment is a speculation which may involve him in debt
and difficulty.

APPEAL from the District Court of West Baton Rouge, *Burk*, J. *Phil-
lips*, for the appellants. *Lacey*, for the defendant. The judgment of
the court was pronounced by

ROST, J. At the syndics' sale of the property of the insolvent *Ananias
Dunbar*, made on the 22d December, 1841, *John Holmes* purchased slaves for
the aggregate sum of $12,110, payable one-tenth of the purchase money cash,
and the balance on a credit of one, two and three years, with interest at the
rate of ten per cent per annum, after the maturity of the respective instal-
ments. Six days after the purchase he filed a petition in the Court of Probates,
alleging that he had purchased those slaves as under-tutor of the minor chil-
dren of the insolvent, and as an investment of a portion of their rights in the
succession of the late *Jane Martin*, their mother. He prayed that a family
meeting be convened for the purpose of taking into consideration the propriety
of adopting and confirming this purchase, in behalf of the minors. The prayer
of the petition was that the under-tutor be authorized to give his notes in be-
half of the minors for the slaves purchased, and that the said minors be
bound thereby. On the 10th January, 1842, a family-meeting was convened,
who declared that the purchase was for the best interests of the minors, and
necessary for their maintenance and education. They recommended that it
be accepted, and the under-tutor authorized to execute his notes as prayed
for.

On the next day, the deliberations of the family-meeting were homologated
by the court, and *John Holmes* was authorized to execute notes for the price of
the slaves, in his capacity of under-tutor. On the following day, he subscribed
notes and consented to a mortgage in his own name, without making any men-
tion of these proceedings. All the slaves purchased but one, were then deli-
vered to the father and tutor of the minors, and have remained in his posses-

sion ever since. No part of the price has been paid, and the plaintiffs now sue the defendant, who is one of the heirs of *Jane Martin*, for her share of this indebtedness.

The defendant denies her liability, and pleads want of consideration. She further alleges: 1st. That *John Holmes* bought for his own use and benefit, and that the slaves became and have remained his property. 2d. That if he had purchased as under-tutor, the sale would be void for want of authority in an under-tutor to make such purchases. 3d. That the purchase could not be ratified by a subsequent family-meeting, and that, if it could be, the family-meeting relied on is illegal, null and void. On the issue thus formed, the District Court gave judgment in favor of the defendant, and the plaintiffs appealed.

*John Holmes* was authorized by the Court of Probates to execute notes for the price of the slaves purchased in his capacity of under-tutor; but he did not comply with the decree. Nothing shows that the notes sued upon were given in execution of it. The purchase having been made by him and in his own name, there was no contract to ratify. The alleged ratification was in fact a sale from the under-tutor to the minors. We are satisfied that art. 1788 C. C. is not applicable to a case like this, and that this sale was not susceptible of ratification.

But the record shows another fact, which entitles the defendant to relief. The amount of the purchase exceeded the available means of the minors, and brought them in debt to the syndics. Neither the family-meeting, nor the Court of Probates, appear to have enquired into the extent of those means. But they manifestly took it for granted that they were sufficient to pay the price. In the language of our predecessors, in the case of *Darse* v. *Leaumont et al.*, 5 Rob. 287: " An investment of funds belonging to the minors was intended to be ratified, and not a speculation which might involve them in debt and difficulty." We concur with the court in that case that, minors are not bound by such speculations.

It is alleged that the slaves are in the possession of the minors, who should have tendered them, before they can be permitted to repudiate the purchase. It does not appear that the defendant, after she became of age, received any of them from her father. She cannot therefore be required to return them. If it be true, as alleged on the other side, that the minors were supported and educated out of the hire and labor of those slaves, the under-tutor has his action for indemnity. We are of opinion that the plaintiffs have failed to show the *stipulation pour autrui*, under which they claim.

*Judgment affirmed.*