THE CHICAGO DOCK COMPANY *et al.*

*v.*

THOMAS H. FOSTER *et al.*

| 48 | 507 |
| 27a | 164 |
| 27a | 529 |
| 48 | 507 |
| 157 | 566 |
| 48 | 507 |
| 94a | 1503 |

1.   BARGAIN AND SALE—*rights of a bona fide purchaser from a fraudulent vendee as against the original vendor.*   Where a party sells goods to another and delivers them, although under such circumstances as would authorize a rescission of the sale and recovery of the goods as against the vendee, a sale of the goods by the purchaser to a party in good faith, will be good, and such party can hold them against an action of replevin by the first vendor.

2.   WAREHOUSEMEN—*warehouse receipts—under act incorporating the Chicago Dock Co., negotiable.*   Under the act incorporating the Chicago Dock Company, a warehouse receipt issued by that company is made negotiable, and as such, absolutely vests in the holder the title to the property specified in it.

APPEAL from the Superior Court of Chicago.

The opinion fully states the case.

Messrs. ROSENTHAL & PENCE, and Mr. JOHN WOODBRIDGE, Jr., for the appellants.

Mr. W. T. BURGESS, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin, brought to the Superior Court of Chicago, by Thomas H. Foster and Augustine Lee, against Moses and Godfrey Snydacker and the Chicago Dock Company, for one hundred barrels of flour.

The cause was tried by the court without a jury, on several issues made up by the parties, the principal of which was on the defendants' fourth and fifth pleas—the fourth assuming that the property and right to possession was in F. Smith & Co., and the fifth averred that it was deposited with Moses

and Godfrey Snydacker, by Smith & Co., as security for a loan of money to them by the Snydackers, and that the property, at the time of the deposit, was the property of F. Smith & Co., and that the money so loaned was still due and unpaid.

The fourth plea was traversed, and to the fifth the plaintiffs replied double, first averring that the property had not been deposited by F. Smith & Co., and held as security by Snydackers, and second, that the property was not in F. Smith & Co.

The court found the issues for the plaintiff, and judgment accordingly. A bill of exceptions was taken, and the record brought here by appeal to reverse the judgment.

Appellants make the point, the sale and delivery of the flour to F. Smith & Co., by Foster & Lee, though subject to rescission by a failure of Smith & Co. to pay for it, according to the terms of the sale, yet, as between them and a *bona fide* purchaser from their vendee, such *bona fide* purchaser ought to prevail.

On the other hand, it is insisted by appellees, that as Smith & Co. obtained the possession of the property fraudulently, and deposited it with the Chicago Dock Company, taking their receipt to themselves, they having no title to the property, the purchase of the receipt by the Snydackers, without the knowledge or consent of the true owners, can confer upon them no rights to the disparagement of those of the appellees.

In the view we have taken of this case, we do not deem it necessary to discuss the various propositions presented by counsel, believing that the case is analagous to that of *Brundage* v. *Camp*, 21 Ill. 330, and must be decided in the same way. Here, as in that case, there was a sale and an actual delivery of the property to the vendee. It is vain to say the sale was a cash sale, and the title not to pass until the money was paid. This may be so, as between the vendor and the vendee. Suppose the vendor should not call with his bill for

payment for several days, and in the interval the purchaser had sold to others, in lawful trade, by the single barrel, the whole of this flour, can it be pretended that the vendor could replevy this flour from these several purchasers? Instead of selling the flour by the barrel, he pledged the whole of it to an innocent party for a loan of money, which is yet unpaid. On what principle is it, the vendor can regain the flour? We are aware of none. The transaction, as between Smith and the vendor of the flour, was an ordinary business transaction, perfectly fair on both sides, the vendor selling the flour absolutely, and delivering it, trusting to the honor of the vendee for payment.

It is said, the purchaser taking the flour to the dock company, instead of taking it to his store, is evidence of a fraudulent intention. This may be so, but on what principle is it, that it should affect an innocent purchaser, without any notice of the supposed fraud?

Smith & Co. were not bailees of this flour; that is clear. If bailees, for what purpose? None is shown. They were purchasers of the flour. The sale and delivery to them was absolute and unconditional, and if they failed to pay for it according to their promise, appellees might, perhaps, have rescinded the sale and reclaimed the property, if they acted before other rights, acquired in good faith, had intervened.

Appellees put Smith in possession of the flour on a sale of it to his firm, a pledge of it, therefore, on a loan of money by an innocent and *bona fide* lender, ought not to be disturbed.

Appellants also invoke the aid of an act of the general assembly, entitled " An Act to incorporate the Chicago Dock Company," approved Feb. 14, 1863, by section 5 of which it is provided, that the said company shall have power to receive upon storage, deposit or otherwise, grain, flour, provisions, &c., and to take the management and custody of the same; and to advance money, give receipts, grant credits, and give security upon any property, real and personal, and guarantee payment

upon freight bills, bills of lading, warehouse receipts, and evidences of debt, on such terms, and at such rates of interest, not exceeding ten per cent. per annum, as may be agreed upon. All warehouse receipts, certificates, or other evidences of the deposit of property, issued by said company, shall be deemed, in the hands of the holder thereof, as absolute title to the ownership of said property, both in law and equity.

We see no reason why full effect should not be given to this provision of the statute, in a case where, as in this, property has been sold and delivered by one party to another, and the vendee has deposited it with this warehouse company, taking their receipt. It seems to have been a deposit in the ordinary course of business, in which it would have been quite unusual for the bailee to have asked of the bailors the question, " where did you get this property—did you come by it honestly ?" The property was, by a fair sale, in the possession of Smith & Co., and nothing appearing to require unusual caution on the part of the bailees, they had the unquestioned right to receive it on deposit, and give therefor this receipt. This receipt, by the terms of the act cited, was evidence to all the world, while in the hands of Smith & Co., of their absolute title to the ownership of the property specified in it.

When this receipt was deposited with the Snydackers, as collateral on loan of money by them, they could have no reason to suppose the depositor had not come by it honestly, nor was there occasion to ask any questions about it. The statute informed them that such a receipt in the hands of a holder was evidence that he was the absolute owner of the property specified in it, and that was sufficient for them. There was no obligation upon them to enquire further, no suspicious circumstances appearing.

This transfer of the receipt to the Snydackers, vested in them, under this statute, the title to the ownership of the flour, and the issue, on that point, should have been found for them.

The case is in no respect like the delivering of goods to a drayman to be carried and delivered, for there is no semblance or pretense of a sale to him.   Here was an absolute sale and delivery of the flour, and the receipt of the dock company spoke this language : " the holder of this receipt is, in law and equity, the absolute owner of the property specified in it."

If a loss is to happen by reason of this transaction, it is more just and equitable that it should fall upon those who trusted the purchasers that they would pay for the flour, and therefore delivered it to them, than an innocent party who had loaned his money to the purchaser, and who held a receipt speaking the above language.   This case is not like the case of *Burton* v. *Curyea*, 40 Ill. 320, cited by counsel, as in that case the warehouse receipt was not negotiable.

The judgment is reversed and the cause remanded.

*Judgment reversed.*