PARKER v. The BROOKLYN. See Case No. 1,938.

## Case No. 10,728.
### PARKER v. BYRNES.
[1 Lowell, 539.] [1]

District Court, D. Massachusetts. Feb., 1871.

STOPPAGE IN TRANSITU — IMPORTED GOODS ENTERED FOR WAREHOUSE—ACTS OF OWNERSHIP—LIEN.

1. It seems, that the seller of imported goods does not lose his right to stop them in transitu on the failure of the buyer, by the mere fact that they have been entered for warehouse, if they were not entered by the buyer, and he has exercised no acts of ownership over them.

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

2. But where the seller had goods on board ship which he sold on four months' credit, and took notes for the price, and handed all the shipping papers to the buyer, who entered the goods and warehoused them in his own name, the seller had thereafter no right of stoppage nor a lien.

3. So where the goods, being in a bonded warehouse, were sold on like terms, and the seller wrote an order of transfer to the buyer, which was accepted by the warehouseman, and handed all the papers relating to these goods to the buyer, and the goods were distinct from all other goods of the seller, he retained in law no lien or right over them.

4. It seems, that by the law of Massachusetts, a purchase of goods with an intent not to pay for them, is voidable by the seller, and so is a sale made upon the faith of any wilful misrepresentation. Such fraud not found in this case.

[Cited in Burrill v. Stevens, 73 Me. 400; Oswego Starch Factory v. Lendrum, 57 Iowa, 583, 10 N. W. 905.]

Bill in equity by [J. G. Parker] the assignee of Edward Oakes, to ascertain the title to certain parcels of salt in bond. Oakes had been a well known salt merchant in Boston for a great many years, and had dealt largely with the defendant [W. B.] Byrnes. In December, 1869, the defendant sold Oakes three several lots of salt on a credit of four months, and took his notes for the price. The first lot had been entered by Byrnes under the warehousing acts, and was in the bonded warehouse of Naylor & Co., on Constitution Wharf. The defendant gave Mr. Oakes a receipted bill of parcels, the necessary papers for getting the goods out of warehouse, and an order on Naylor & Co. to deliver "five hundred and twenty-five sacks Ashton salt, bal. lot ex ship Arcadia in good order," and this was accepted in writing by the warehousemen. The defendant afterwards made a memorandum on the back of the order that storage was to begin about the third of January, 1870. The second and third lots were both on board ship, at the time of the sale, and were entered and warehoused by Oakes, who never removed the goods nor paid the duties, and when he stopped payment in February the defendant wrote him that he should not complete the sale nor deliver the salt, and tendered him back his notes which were not accepted but returned by Oakes. The defence was that the sale had been procured by fraudulent representations by Oakes of his commercial standing, and that it had never been fully completed.

T. H. Sweetser and T. Weston, Jr., for plaintiff.

H. W. Paine and T. F. Nutter, for defendant.

LOWELL, District Judge. The mere fact that goods imported from abroad upon the order of a buyer have come into the hands of the officers of the customs, and have been by them put into a warehouse, the buyer exercising no acts of ownership over them, has been held not to determine the transit. Burnham v. Winsor [Case No. 2,180]; Donath v. Broom-

head, 7 Barr [7 Pa. St.] 301. Nor does the seller's right depend on the question whether the property has passed. In the case of Barrett v. Goddard [Id. 1,046], cited at the bar, the lien of the seller was disallowed, although the goods remained in his own warehouse, because the title had fully vested in the purchaser. But I take the modern doctrine to be, that if the buyer stops payment before the seller has actually parted with possession, though after he has parted with the title, if no rights of innocent third persons have intervened, his lien revives, if he is able to give up the note received for the price; and that an assignee in bankruptcy stands in this, as in all other cases not involving fraud, on the precise footing of the bankrupt himself. Arnold v. Delano, 4 Cush. 33. So that if it were true, as assumed by the defendant in his letter of the ninth of February, that the possession was still in him, he had a lien somewhat analogous to the right of stoppage in transitu, which he might enforce against the bankrupt, and against the present plaintiff. In the case of the two lots entered, and warehoused by Oakes, it is now admitted that there was no scintilla of possession left in Byrnes. And it seems to me equally clear that Oakes was in possession of the Ashton salt. The defendant had made over all the papers necessary for the withdrawal of this salt from the warehouse; the warehouseman had agreed to look to Oakes as his principal, and the order itself shows that the salt was all that remained of a certain cargo, and so must have been separate and distinct from all other goods. This was all the delivery that the nature of the case required, and Naylor & Company thereby became the agent of Oakes, and ceased to be the agent of Byrnes, which is the usual test. Hollingsworth v. Napier, 3 Caines, 182; Carter v. Willard, 19 Pick. 1; Foster v. Frampton, 6 Barn. & C. 107. In the case of Mottram v. Heyer, 5 Denio, 629, it is said by the chancellor that the mere entry of the goods by the consignee will not put an end to the right of stoppage, nor will the storing them by the revenue officers for safe-keeping; but he adds that if they were warehoused under the direction of the consignee in accordance with the acts of congress, the delivery would be complete. It is argued that the order on Naylor & Co. contained the implied condition that the duties should be paid before delivery, and this is true. But it was not a condition imposed by the seller, and had no relation to the contract between these parties. The order was, in effect, to hold for Oakes as the warehouseman had before held for Byrnes, subject to the act of congress which requires payment of duties before the removal of the goods out of custody. The word delivery, therefore, as thus used in argument introduces a fallacy. The seller parted with all the possession which he had, unconditionally; and the constructive delivery by order and acceptance, was a legal equivalent for actual delivery,

and put an end to all transit, and all lien on his part.

The evidence does not satisfy me that there was fraud in the purchase. Byrnes says that Oakes told him that his note was good and would be paid, and it seems that Oakes must at that time have been insolvent. No questions were asked of Oakes by either side concerning this representation, an oversight which may have arisen form the irregular mode in which the case was prepared, the answer having been filed after his deposition was taken. But he undertakes to tell all that passed between the parties, and his silence on this point is to some extent contradictory of the statement of the seller. I take it to be the law of Massachusetts, which governs this contract, that a fraudulent misrepresentation by the buyer, relied on by the seller, will avoid the sale. And a purchase of goods with a distinct intention not to pay for them will have a like effect. This doctrine has been denied in some other states, but is adhered to in this commonwealth. Dow v. Sanborn, 3 Allen, 181; Kline v. Baker, 99 Mass. 253; Biggs v. Barry [Case No. 1,402]. It may be difficult of application, but there are cases in which it would apply. If it were proved that a merchant, knowing himself to be insolvent, bought goods for the express purpose of putting them or their proceeds into the hands of a favored creditor, and expected then to stop payment, the sale could be avoided within the meaning of the Massachusetts authorities as I understand them. This is, in substance, the ground taken by the defendant; but I am not satisfied that it is made out in evidence. All the circumstances of the sale tend to prove that Oakes was acting as a buyer usually acts, that he made a good bargain, and was tempted by the low price; and there is nothing but the actual state of his affairs and of his dealings about this time in the way of paying off his friends that has any tendency to establish fraud. He swears that he did not know of his insolvency, and did not expect to stop payment, and that he was forced into failure by the conduct of his brother in holding money, put in his hands for another purpose, as a set-off for a large debt due him. Undoubtedly there are circumstances which tend to throw suspicion on this transaction with the brother; but they are not sufficient to enable me to say that the bankrupt's whole conduct for two months was fraudulent, and that his business was kept alive merely to enable him to prefer his friends; and to this extent must the evidence go before this particular contract can be set aside on the ground of an intent not to pay, because as to these particular goods there is no evidence whatever that he intended to use them as a means of fraud; so that this sale can be avoided on that ground only if all sales made to the bankrupt at or after that time can be avoided.

As to the misrepresentation, it appears that the defendant had dealt with Oakes for

years. and had no reason to make any particular inquiries, and made none excepting casually and in very general terms; and when Oakes stopped payment, the rescission was demanded on totally different grounds without any allusion to a misstatement. The bankrupt is not asked about it, and mentions no inquiries or representations; but does say that he had no knowledge of insolvency or intention or expectation of failure. Upon the whole, I do not find that there was a fraudulent misrepresentation made by the buyer and relied on by the seller. If any thing was said it was scarcely more than is implied in the giving a note on four months, and I am not satisfied it was fraudulently said, and it seems to have made but little impression on the mind of the seller, and not to have been recalled even when the failure was made known to him. Decree for the plaintiff.