## Oswego Starch Factory v. Lendrum.

1. **Fraudulent Sale:** ACTION TO RECOVER: DEMAND. Where the vendor seeks to recover goods, after they have been attached as the property of the vendee, upon the ground that he was induced to deliver them through fraud, the gist of the action being the title to the property, it is not necessary, in order to maintain the action, to allege and prove a demand.

2. ——: ——: RESCISION OF CONTRACT OF SALE. Where the vendor rescinded the sale of goods on account of the fraud of the vendee in inducing the sale and delivery, and brought an action to recover the goods, it was not required by law that notice of the rescission of the sale should be given before the action was commenced.

3. ——: ——: ——: CREDITORS: NOTICE OF FRAUD. The vendor, after the attachment of the goods by the creditors of the vendee, has the right to rescind the sale for fraud perpetrated by the vendee, of which the creditors had no notice. An attaching creditor parts with no consideration, and acquires no greater rights to the property than the vendee had.

4. ——: ALLEGATIONS OF: RESCISSION OF SALE. Allegations of fraud and fraudulent intentions considered. An intention on the part of the vendee not to pay for goods bought by him, which he conceals from the vendor, is a fraud which will authorize the vendor to rescind the sale.

### Appeal from Polk Circuit Court.

#### Tuesday, December 20.

ACTION of replevin. There was a decision for defendant upon a demurrer to the petition. Plaintiff appeals.

*A. B. & J. C. Cummins,* for appellant.

*Nourse & Kauffman,* for appellee.

BECK, J.—I. The petition alleges that plaintiff shipped to Thompson & Reeves, pursuant to their orders, certain goods. The other material averments we present in the language of the pleader, as follows:

"That at the time said goods were so ordered, shipped and received, said Thompson & Reeves, as a firm, and as individuals, were, and had for a long time been, insolvent to their own

knowledge; that they ordered and received the same, well knowing such insolvency and their inability to pay therefor; that they ordered and received the same with the intent not to pay therefor, and to cheat and defraud the plaintiff of the purchase price thereof.

"Plaintiff further states that said Thompson & Reeves concealed from it their insolvency and their inability to pay for said goods, and their intention not to pay for the same, and their intention to cheat and defraud the plaintiff of the purchase price thereof; and the plaintiff further states that, relying on the solvency and good faith of said Thompson & Reeves, and not knowing of their fraudulent intention, or of their insolvency, it sold said goods and shipped the same as hereinbefore stated.

" Plaintiff further states that after the writs of attachment, hereinafter mentioned, were levied upon the goods in controversy, but before the bringing of this suit, it elected to rescind said contract of sale, and without notice thereof, brings this suit.

" That it so elected to rescind the same as soon as it was informed of such fraudulent conduct and intention on the part of said Thompson & Reeves.

" Plaintiff further states that by reason of such fraudulent conduct and intent and said . election to rescind, the plaintiff is the absolute and unqualified owner of said goods and merchandise.

" That the defendant wrongfully detains possession of said property from the plaintiffs at Des Moines, Polk county, Iowa, and that the same is of the value of one hundred and nineteen dollars; that said property was taken neither on the order or judgment of a court against the plaintiff, nor under an execution or attachment against it, or against said property.

"That the defendant, the sheriff of Polk county, took and detains the same on certain writs of attachment against the property of Thompson & Reeves; that said sheriff, having no

knowledge of such fraud, levied on said goods and chattels under said writs of attachment as the property of said Thompson & Reeves; that he holds the same under a claim of absolute ownership in said Thompson & Reeves, and under a claim that the rights of the plaintiff, in said suits wherein the attachments were issued, who had no knowledge of said fraud, are paramount and superior to those of the plaintiff in said goods and chattels."

The demurrer to the petition is in the following language:

"1st. Said petition fails to show that any demand has ever been made upon defendant, or Thompson & Reeves, for said goods.

"2d. Said petition shows that plaintiff gave no notice of its election to rescind said contract of sale, either to defendant or Thompson & Reeves, or any other party, before the bringing of this suit.

"3d. The petition shows that plaintiff elected to rescind said contract of sale after defendant levied on said goods, and also shows that defend int and the attaching creditors had no knowledge of said alledged fraud, and said contract of sale cannot be rescinded after defendant's levy thereon, to the prejudice of attaching creditors.

"4th. Said petition fails to show or charge Thompson & Reeves with any false representations or fraudulent concealment of the facts or motives or intent charged in the petition, and fails to show that plaintiff had any right to rescind."

II. The questions arising in the case will be discussed in the order we find them presented in defendant's demurrer, which, we think, accords with their logical sequence. The first question is this: Must a demand be alleged and proved in order to support the action? The petition alleges that the absolute and unqualified title of the goods is in plaintiff and thereon is based the right of posession of the property, for the recovery of which the action is brought. The alleged cause of detention of goods

1. FRAUDULENT SALE: action to recover: demand.

by defendant, as required by Code, section 3225, par. 5, is also shown. The defendant, it thus appears, seized the goods upon an attachment, claiming that they were the property of Thompson & Reeves. It therefore appears that no question of possession, disconnected from the ownership of the property, is in the case. The parties respectively claim the right to the possession of the property under conflicting and adverse titles. While the remedy sought is the possession of the goods, the gist of the action, so far as the rights of the parties are concerned, is the title to the property. Defendant's right to the possession is absolute and unqualified, if plaintiff is not the owner of the goods, and no act of the plaintiff's can defeat that right. We discover that the contention of the parties is not about the right of possession, disconnected from the title, but is about the title of the property. The question before us has been more than once ruled by this court. We have held that a demand is required only when it is necessary to terminate defendant's right of possession or confer such right on plaintiff, and that when both parties claim title and right of possession incident thereto no demand need be made. *Smith v. McLean*, 24 Iowa, 322; *Jones v. Clark*, 37 Iowa, 586; *Redding v. Page*, 52 Iowa, 406; *Thurston v. Blanchard*, 22 Pick., 18; *Ayers v Hewitt*, 19 Me., 281.

This rule is not questioned by defendant's counsel, but they urge that as the petition shows that plaintiff had not rescinded the sale when the suit was brought, defendant did not wrongfully seize the goods, and defendant could not know, without a demand, that plaintiff would not concede and recognize defendant's claim to the property. There might be something in this position, if the petition did not, as required by statute, set out defendant's claim to the property as based upon the title. The petition thus states both sides of the case and takes the place of an answer. (Of course all its averments may be denied in an answer.) The demurrer admits the averments of the petition, one of which is that defendant " holds " (present

tense) the property under a claim based upon the absolute ownership of the goods in Thompson & Reeves.   The defendant's counsel cannot deny in argument what they have admitted in their demurrer.

III.   Does the law require plaintiff to allege and prove notice of rescission of the sale of the goods given before the action was commenced?   It will be observed that the petition alleges the rescission of the contract of sale was on account of the fraud of the vendee in inducing plaintiff to enter into it, and that under the sale a delivery of the goods was made to the vendee.

2. ——: ——: recission of contract of sale.

Counsel for defendants cite no case which holds a notice to be necessary.   We know of no principle of law which requires it.   We know that such a rule would practically defeat the remedy the law secures to vendors, by recovering the property when the sale is induced by the fraud of the vendees.   The thought is ludicrous that the rule should be applied to "lightning rod men," to the vendors of patent rights and patented articles, to those who travel over the State appointing agents for the sale of agricultural implements, "hog cholera cure," etc., etc., and to other like adventurers.   They are usually far beyond the reach of notices, or become invisible immediately after perpetrating their frauds.   It would be quite as wise to require a thief to be notified that a warrant will be issued for his arrest, as to require notice to swindlers before instituting proceedings to recover the property which they have acquired by their frauds.   The language of the Illinois Supreme Court in *Johnson v. How*, 2 Gilman, 345, quoted in *Smith v. McLean, supra*, holding that a demand for the property is not required, is just as applicable to the case of notice.   It is as follows:

" It could scarcely be insisted that if one to whom a horse had been loaned, instead of returning him according to contract, should attempt to run him from the country, and the first intelligence received by the owner should be, that he

VOL. LVII—37

was actually absconding with his property, such owner would be bound, before he could properly procure a writ of replevin upon which to retake the same, to follow and overtake the wrong-doer, and formally demand his property."

If the vendee is not entitled to notice of the rescission of the contract, those claiming under him are not. They hold the property under the title of the vendee, and in cases where they are not innocent purchasers for value, they are entitled to no higher rights than the vendee. We shall soon discover that defendant and the plaintiffs in the attachment are not protected as innocent purchasers for value.

IV. Did plaintiff have authority to rescind the sale after the levy of the attachment? It is not denied that as against the vendees he possessed such right before the attachment; but defendants' counsel insist that after the attachment no such power existed. The proposition of law which they maintain, may be stated in these words: The vendor after the attachment of the goods by the creditors could not rescind the sale for fraud perpetrated by the vendee, of which the creditors had no notice. It will be discovered that the point of contest involves the rights of an attaching creditor without notice.

<div style="margin-left:2em">3. ——: ——: credit- ors: notice of fraud.</div>

The title of the property was not divested by the attachment, but remained in the vendees. The seizure conferred upon the creditors no right to the property as against plaintiff other or different from those held by the vendee. The sole effect of the seizure was to place the property in the custody of the law, to be held until the creditors' claims had been adjudicated and the property could be sold on execution. They parted with no consideration in making the attachment, and their condition as to their claims were in no respect changed. Their acts were induced by no representation or procurement originating with plaintiff which would in law or equity give them rights to the property as against plaintiff. Plaintiff's right to rescind the sale inhered in the contract and attached to the

property. It could not be defeated except by a purchaser for value without notice of fraud. It is not important that we inquire as to the foundation of the rule favoring innocent purchasers. The facts upon which it is based are these: the payment of consideration for the property, and ignorance of the fraud. As we have seen, an attaching creditor has paid no consideration, and has not changed his condition relative to his claim by the attachment. He does not possess the same right held by an innocent purchaser under the rules recognized by the law.

Our position is simply this, that as an attaching creditor parts with no consideration, and does not change his position as to his claim, to his prejudice, he stands in the shoes of the vendee. It cannot be questioned that the right of rescission as between the vendor and vendee inheres in the contract and attaches to the property. The innocent purchaser for value occupies a different position, and his rights are, therefore, different. These views and conclusions find support in the following authorities: Drake on Attachment, section 246; Biglow on Fraud, page 311; Wells on Replevin, page 184, section 324; *Buffington v. Gerrish*, 15 Miss., 156; *Bussing v. Rice*, 2 Cush., 48; *Wiggins v. Day*, 9 Gray, 97; *Field v. Stearns*, 42 Vt., 106; *Fitzsimmons v. Joslin*, 21 Vt., 129; *Poor v. Woodburn*, 25 Vt., 234; *Jordan v. Parker*, 56 Me., 557; *Ayers v. Hewitt*, 19 Me., 281; *Bradley v. Obear*, 10 N. H., 477; *Farley v. Lincoln*, 51 N. H., 577; *Thompson v. Rose*, 16 Conn., 71; *Barnard v. Campbell*, 58 N. Y., 73; *Devoe v. Brandt*, 53 N. Y., 463; *Root v. French*, 13 Wend., 570; *Hitchcock v. Covell*, 20 Wend., 167; *Gasquet v. Johnson*, 2 La. Ann., 515–523; *Galbraith v. Davis*, 4 La. Ann., 95; *Bristol v. Willsmore*, 1 B. & C., 514; *Load v. Grun*, 15 M. & W., 216; *Johnson v. Peck*, 1 Wood & M., 336.

These cases all agree in holding that the creditors of a vendee, who, by fraud, induced the sale, cannot hold the property under proceedings to enforce their debts against the ven-

dors.  There is not, however, entire harmony in the reasoning of the different cases, or the grounds upon which the several decisions are based.

The main ground upon which defendants' counsel assail our conclusion is that the creditors are deprived of rights by defeating their attachment.  They express the thought in this language: " The creditors, in reliance upon the possession and title of the vendee, had *exhausted their writ* and are now placed in the position where the successful assertion of the right to rescind will *take from them* a lawfully acquired security, upon the faith of which they rightfully relied in measuring the extent of their right of seizure of the debtor's property."

In speaking of the hardship imposed upon the creditors by the doctrine we adopt, they say: "They stand, therefore, as honest creditors, honestly trying, under the law, as we have said, by the only means in their power to secure their debt. They levy upon property, the title to which at the time of the levy thereon, is in the vendee.     *     *     *     *     * But, having levied upon this property thus owned by the vendee, they are obliged to cease their effort in the direction of the seizure of property.  They must stop.  No matter how much other property the defendant has, they can go no further. Their hands are tied."

Counsel in contemplating the rights and remedies of the creditors, forgot the rights of others.  The levying of an attachment *per se* gives the creditors no rights to the property seized, and does not defeat the rights of lawful claimants thereto.  If the property is not subject to the levy, they acquire no lien thereby.  The argument of defendant's counsel, if sound, would lead to the conclusion that a creditor could hold the property of A, upon an attachment issued against B, for the simple reason that the creditor in good faith is using efforts to collect his debt, and believes the property seized belongs to B.

V. Does the petition show such fraud as to authorize plaintiff to rescind the sale? The petition, it will be observed, alleges that Thompson & Reeves were insolvent, and unable to pay for the goods, of which they had full knowledge; that they ordered the goods with the intention not to pay for them, and to defraud plaintiff out of the price thereof; that they concealed from plaintiff their insolvency and fraudulent intention, and that plaintiff made the sale relying upon the good faith and solvency of the vendees, and in ignorance of their insolvency and fraudulent intentions. These allegations disclose the fraudulent animus of the vendees; that they concealed their intentions and their insolvency, and that the vendor was induced to sell the goods by reason of his belief of the solvency and good faith of the vendees. The solvency of the vendees was a material inducement to the sale. But the vendees were insolvent, and it is averred they concealed their insolvency. If it be held that this allegation implies not only their silence or omission to disclose their insolvency, but also acts or devices by which they hid their true condition from the observation of plaintiff, the petition, therefore, must be regarded as showing not only fraudulent intentions, but acts, concealments, done in pursuance thereof. Numerous cases hold that fraudulent concealment of facts pertaining to the inducements to the sale, authorizes its rescission. See *Donaldson v. Farwell*, 93 U. S., 631. Other cases to the same effect need not be here cited, as we do not understand that counsel for defendant dispute this doctrine. Their position on this point of the demurrer is that the petition does not aver any fraudulent act done by the vendee inducing the sale—that it charges fraudulent intentions without overt acts, and nothing more.

VI. But the petition distinctly avers an intention on the part of Thompson & Reeves not to pay for the goods purchased of plaintiff, and the concealment from plaintiff of such

*Marginal note: 4. ———: allegations of: rescission of sale.*

fraudulent intention.   We are required to determine whether the facts thus alleged authorized plaintiff to rescind the sale.

While fraud rests in mere intention the law will give no relief against it, for, indeed, an unexecuted purpose to defraud another can work no injury.   But when the purpose is carried out by acts, and injury results, the wrong-doer will be pursued by the most effective remedies.   Now, an intention of the vendee not to pay for goods purchased is in morals a gross fraud, and when the goods are purchased with such an intention, the fraudulent purpose is accompanied by the act of purchase.   The fraud no longer rests in unexecuted intention, it is actually perpetrated by the purchase.

The use of the words "purpose" and "intention" in this connection must not mislead to the conclusion that the fraud against which relief is sought has not been perpetrated.   The purchase of the goods is the fraudulent act, and it is fraudulent because of the accompanying intention.   It cannot be said that the law will not grant relief because the fraudulent character of the act is determined by the intention of the wrong-doer.   Many acts are by the law deemed fraudulent only on the ground of the dishonest intentions accompanying them. Indeed, the purpose of the wrong-doer usually determines the character of the act.   If it be dishonest, the act is fraudulent; if it be honest, the act is a mistake.   The intention, therefore, must usually be sought for in cases of fraud.

A sale of goods in order to be valid between the parties must be a contract wherein the minds of the vendor and vendee meet.   The vendor sells for a price to be paid by the vendee.   The vendor understands that the vendee assents to pay the price.   If the vendee fraudulently intends at the time of the sale not to pay for the goods, and conceals this intention from the vendor, the minds of the two do not meet.  The vendor does not assent to the sale of the goods upon the conditions which are in the mind of the vendee.

All sales of goods between honest men are accompanied by the understanding that the vendee will honestly pay for them, or will try to pay for them. The vendor is authorized to presume that such a purpose is entertained by the vendee, and this becomes a condition of the sale. If it be absent it is plain that the vendor does not give his assent to the transaction in the form it assumes under the fraudulent intention of the vendee.

The fact that the intention of the vendee, the virus which poisons the act, rests in his own breast, will not defeat the remedy which the law provides against the fraud. It may be shown by proof of its manifestations. These are usually the acts done by the wrong-doer, and the circumstances surrounding him and the transaction.

We conclude that an intention on the part of the vendee not to pay for goods bought by him, which he conceals from the vendor, is a fraud which authorizes the vendor to rescind the sale. This rule prevails in Massachusetts. *Wiggin v. Day*, 9 Gray, 97; *Dow v. Sanborn*, 3 Allen, 181; *Kline v. Baker*, 99 Mass., 253; *Rowley v. Bigelow*, 12 Pick., 309.

It is the law in New York. *Hennequin v. Taylor*, 24 N. Y., 139; *Ash v. Putnam*, 1 Hill, 302; *Bigelow v. Heaton*, 6 Hill, 44; *Byrd v. Hall*, 2 Keys, 647; *Johnson v. Monell*, 2 Keys, 655; *Hall v. Naylor*, 18 N. Y., 588; *King v. Phillips*, 8 Bosw., 603.

The doctrine is recognized in Connecticut, Maryland, Missouri, and Vermont. *Thompson v. Rose*, 16 Conn., 71 (81); *Powell v. Bradley*, 9 Gill & J., 220 (278); *Bidoult v. Wales*, 20 Mo., 546; *Fox v. Webster*, 46 Mo., 181; *Redington v. Roberts*, 25 Vt., 686 (694).

It has the support of the following English cases: *Bristol v. Willsmore*, 1 B. & C., 514; *Ferguson v. Carrington*, 9 B. & C., 59; *Kirby v. Wilson*, Ryan & M., 178; *Noble v. Adams*, 7 Staunt., 59. It is also announced in *Parker v. Byrnes*, 1 Lowell, 539, and in *Briggs v. Barry*, 2 Curtis, 259 (262).

The rule is also followed in New Hampshire. See *Stewart v. Emerson*, 52 N. H., 301. It is claimed that the facts of this case do not necessarily require the application of the doctrine, and, therefore, all that is said by the court in its support is *dictum*. The opinion discusses the rule at great length, and reviews the authorities bearing upon the subject. The reasoning is cogent and exhaustive, and presents clear and direct support of the rule. The report should show very clearly that facts to which the doctrine is applicable are wanting, to warrant the conclusion that the protracted and able discussion of a court so respectable is made in support of a mere *dictum*. We ought rather to presume, unless the contrary clearly appears, that the question was really in the case, though the report does not clearly disclose it. We think, however, the opinion shows that the question involving the doctrine is in the case. The following quotation from the decision supports this conclusion: "The judge instructed the jury that the debt was created by the fraud of the defendant, if defendant by his acts or words prior to or at the time of the sales, intentionally induced plaintiff to believe that he intended to pay for the goods and defendant did not intend to pay, and the defendant induced this belief intending to deceive the plaintiff and induce him to sell the goods to defendant, and plaintiff was thereby deceived and was induced by this misrepresentation to make the sales, and would not have made them if defendant had not made this misrepresentation." See p. 311. The rule of the instruction stated by the court, in brief, is this: Representations by words or acts that the vendee intended to pay for the goods, when he did not intend to pay for them, whereby the vendor was induced to sell, is fraudulent. But the representations by the acts of the vendee, which under the rule would be fraudulent, would arise by the concealment of the fraudulent intention not to pay for the goods. This is clearly stated in the following quotation from the opinion, p. 322: "But who could obtain goods on credit

with the unconcealed determination that they shoulu not be paid for? The concealment of such a determination is conduct which reasonably involves a false representation of an existing fact [and] is not less material than a misrepresentation of ability to pay (*Bradley v. Obear*, 10 N. H., 477), and is an artifice intended and fitted to deceive. An application for an acceptance of credit by a purchaser is a representation of the existence of an intent to pay at a future time, and a representation of the non-existence of an intent not to pay. What principle of law requires a false and fraudulent representation to be express, or forbids it fairly to be inferred from the act of the purchaser?"

We think it clearly appears that the question involving the doctrine under consideration was directly presented for decision in the case. There are, however, cases that are in conflict with the rule. See *Smith v. Smith*, 21 Pa. St., 367; *Backentoss v. Spercher*, 31 Id., 324. *Cross v. Peters*, 1 Greenl.; 343 is cited by counsel as being to the same effect. But we think it does not go so far. The doctrine of the case is that the purchase of goods by one who was insolvent but not aware of the fact, without artifice or false representations, is not fraudulent.

*Bell v. Ellis*, 33 Cal., 620, is relied upon by defendant's counsel as supporting his side of the case. But the point ruled in the case is that insolvency of a vendee, without an intention not to pay for goods bought and without false representations, will not avoid the sale. The case overrules the prior decision in *Sleigman v. Kolkman*, 8 Cal., 207. *Wilson v. White*, 80 N. C., 280, is also cited by defendant's counsel, but the point under consideration was not in the case. The Pennsylvania cases supported by *dicta* or statements *arguendo* found in the two cases last mentioned are the only authorities to which we have been referred which support the position of defendant's counsel. It is certainly true as we have shown, that the great weight of the authorities support the conclusion we have reached upon this branch of the case.

We have in the foregoing discussion considered all questions arising in the case. It is our opinion that the judgment of the Circuit Court ought to be

REVERSED.