OF

## THE STATE OF IOWA,

. AT

## DES MOINES, OCTOBER · TERM, A. D. 1891,

AND IN THE FORTY-FIFTH YEAR OF THE STATE.

---

MAX J. BAEHR, Appellee, v. A. A. CLARK, Appellant.

Sale: PURCHASE FROM BAILEE: TITLE. In an action of replevin to recover certain diamonds it appeared that the defendant was an innocent purchaser thereof for value from one B., who represented that he was the owner of the same, but who in fact had obtained possession of them from the plaintiff under the representation that he had a customer for the same, and was permitted to take them from the plaintiff's store under promise that he would return with the diamonds or the price in about an hour. *Held*, that the defendant obtained no title by his purchase, and that the plaintiff was entitled to recover.

*Appeal from Pottawattamie District Court.*—HON. A. B. · THORNELL, Judge.

MONDAY, OCTOBER 5, 1891.

( 313 )

ACTION of replevin for a diamond ring and a diamond stud. The plaintiff and the defendant each claim to be the owner of said property. The cause was submitted to a jury, and, the jury being unable to agree upon a verdict, by agreement of the parties the issue was afterwards submitted to the court without a jury, on the evidence taken by the short-hand reporter at the jury trial. The court, upon an examination of the evidence, found for the plaintiff. The defendant appeals.—*Affirmed.*

*Flickinger Bros.*, for appellant.

*Chas. Ogden* and *Wright, Baldwin & Haldane*, for appellee.

ROTHROCK, J.—I. The court made special findings of the facts which it was thought were established by the evidence. We need not set out these findings in detail, but will recite such as are deemed material to a determination of the rights of the parties upon an appeal.

The plaintiff is a dealer in diamonds at the city of Omaha, in the state of Nebraska. In the month of December, 1888, one J. J. Barker made his appearance at the plaintiff's place of business, and represented that he had a customer for a diamond ring and stud, and desired to examine the plaintiff's goods. He selected the ring and stud now in controversy, and the plaintiff delivered them to him to take them and show them to the party who desired to make the purchase. The sum of four hundred and fifty dollars was fixed as the price of the diamonds, and Barker was to return them, or return with the price, in an hour. The plaintiff saw no more of Barker for two or three days, when he succeeded in having an interview. Barker at first stated that he had been robbed of the diamonds; said he had

been knocked down and robbed, and called attention to.
certain bruises on his face and marks on his fingers.
The plaintiff threatened to have Barker arrested, and
then he stated he had lost the diamonds at a gambling
house; and afterwards he stated that they were in pos-
session of the defendant Clark at Council Bluffs. It
was afterwards ascertained that Barker, after obtaining
possession of the diamonds, crossed the Missouri river
to Council Bluffs, and stopped at a gambling house
kept by one Carrigg. While there he was in urgent
need of money, and Carrigg advanced money to him,
from time to time, and took and held the diamonds as
security. When these advancements amounted to the
sum of two hundred and forty-seven dollars Carrigg
refused to make further advancements, and he and
Barker went to the defendant with the diamonds, and
sold them to him for the sum of two hundred and
seventy-five dollars, and Clark paid Carrigg, the keeper
of the gambling house, the sum of two hundred and
forty-seven dollars, and he paid Barker the balance,
being twenty-eight dollars. Barker represented to the
defendant that the diamonds belonged to him. There
are other facts disclosed in evidence as to efforts made
by the plaintiff to obtain payment for the property, and
offers to purchase the diamonds from Clark, which are
of no importance in the case. The plaintiff did no act.
which would in law estop him from asserting any claim
he may have had at any time to recover the property
from Clark. The court found that Clark was an inno-
cent purchaser for value, and we are inclined to think
that finding was correct.

The only real question in the case is whether Clark
is entitled to the property as an innocent purchaser.
Other facts might be stated which authorize the conclu-
sion that Barker obtained the possession of the goods by
fraudulent representations, but enough has been stated.
to show that the court was fully authorized in finding

that Barker had no customer' for valuable diamonds. The fact that he did not return in an hour, but repaired to a gambling house, and pledged the diamonds to the keeper of the house, fully warrants the finding that he obtained possession of the property by fraud. If the plaintiff had sold and delivered the diamonds to Barker upon these representations, and Barker had resold to the defendant, he being an innocent purchaser, the plaintiff could not maintain this action. It is well settled that when goods are obtained from their owner by fraud, and the facts show a sale to the party guilty of the fraud, an innocent purchaser of the goods from the fraudulent vendee for value, and without notice of the fraud, will take the title. The true inquiry is, did the owner intend to transfer both the property in and possession of the goods to the person guilty of the fraud? If he did, there is a contract of sale, however fraudulent the device, and the property passes, and subsequent innocent purchasers for value will be protected. *Rowley v. Bigelow*, 12 Pick. 312; *Perkins v. Anderson*, 65 Iowa, 398; 1 Parsons on Contracts, 520. And see *Oswego Starch Co. v. Lendrum*, 57 Iowa, 573, in which the rule announced is recognized, but held not applicable to an attaching creditor of the fraudulent vendee. *Robinson v. Pogue*, 86 Ala. 257; 5 S. Rep. 685; *Hutchinson v. Watkins*, 17 Iowa, 475; *Chicago Dock Co. v. Foster*, 48 Ill. 507. But this rule has no application unless there is an actual sale of the property by the alleged vendor. If one delivers property to another as a mere bailee, a purchaser from the bailee acquires no title, however innocent he may be. He has no more right to assert title to the property than if it had been stolen, and his purchase had been from the thief. The principle upon which this distinction rests is that the vendor in the cases last supposed does not part with the title to the property, nor does he have any such intention, and the fraudulent

possessor of the property can convey no title to any third person, however innocent; for no property has passed from himself to the true owner. Benjamin on Sales, 369; *Rohrbough v. Leopold*, 4 S. W. Rep. (Tex.) 460; *Church v. Mellville*, 21 Pac. Rep. (Or.) 387.

It is very plain that the transaction between the plaintiff and Barker did not pass the title of the diamonds to Barker. He did not pretend or claim that he wanted to purchase diamonds. He was intrusted with the possession of them merely as the agent of the plaintiff; and, instead of returning them, he embezzled them by pawning them in a gambling house, and by subsequently, in connection with the keeper of the house, selling them to the defendant. The authorities appear to be uniform that in such case the purchaser from a mere agent or bailee acquires no title, even though he pay value and has no notice of the embezzlement, and that the rule *caveat emptor* applies. It is idle to contend that Barker did not have the criminal intent to embezzle the diamonds when he obtained possession of them from the plaintiff. There is no evidence that he had any friend who was in need of diamonds. All of his acts subsequent to the time he acquired possession indicate that his purpose, from the inception of his enterprise, was not to procure a purchaser for the property, but to appropriate it to his own use. There are no other questions in the case which demand consideration.

The judgment of the district court is AFFIRMED.