## JAFFREY and others *v.* BROWN and others.

*(Circuit Court, S. D. Georgia, W. D. October 26, 1886.)*

1. COURTS—FEDERAL—APPOINTMENT OF RECEIVERS.
    When, under the statute of Georgia, it is right to appoint a receiver, the equity courts of the United States may administer and enforce that right, where they have jurisdiction.

2. EQUITY—MASTER'S REPORT—EXCEPTIONS—PRESUMPTIONS.
    In the determination of exceptions to a master's report, the presumptions are in favor of the findings of the master, and such findings will not be disturbed, unless shown to be erroneous.

3 SAME—TREATMENT OF EXCEPTIONS.

Exceptions to the master's report are regarded so far only as they are supported by the statements of the master, or by evidence to which the attention of the court is called by reference to the particular testimony.

4. SAME—SETTING ASIDE REPORT—WEIGHT OF EVIDENCE.

The power of the court to set aside the report of the master is not to be exercised, except for good cause, and mere difference of opinion as to the weight of the evidence, when there is a substantial conflict, is not such good cause.

5. SAME—SALES UNDER ORDER OF COURT—INTERFERENCE BY PARTIES — DISTRIBUTION OF PROCEEDS.

When parties to the bill, having claims against a stock of goods in the hands of a receiver, unwarrantably interfere at a sale of such goods under the order of the court, and, by pretended bids, occasion a loss to the fund arising therefrom, the amounts otherwise due to them on the general distribution will be mulcted by the court, to protect other creditors from loss on account of their conduct.

6. MORTGAGE—VALIDITY—DESCRIPTION OF PROPERTY COVERED—CODE GA. § 1955.

A mortgage must clearly indicate the property upon which it is to take effect. Code Ga. § 1955.

7. SAME—GENERAL DESCRIPTION INSUFFICIENT—"ENTIRE STOCK," etc.

The following description: "Our entire stock of dry goods, boots, shoes, hats, clothing, and notions. and such other goods as are usually kept in a first-class country store,"—without any indication as to the whereabouts of the goods, or without any other language of identification,—is not a sufficient description.

8. SALE—RIGHTS OF VENDOR—RESCISSION FOR FRAUD—RECAPTION—GENERAL CREDITORS.

Where goods are obtained by fraud, the sale is void, and passes no title, and the right of the vendor to retake the goods in the hands of the fraudulent vendee, who is insolvent, is superior to the claim of a general creditor of the latter.[1]

9. SAME—PURCHASE WITH INTENT NOT TO PAY.

A contract for the purchase of goods on credit, made by the purchaser with intent not to pay for them, is fraudulent; and, if he has no reasonable expectation of being able to pay, it is equivalent to an intent not to pay.[1]

10. SAME.

The facts of this case abundantly show such fraud as will vitiate the sale, under the rules above given.

(*Syllabus by the Court.*)

In Equity.

*Alex. Proudfit, Willingham & Patterson, Hardeman & Davis, Dessau & Bartlett, A. C. Riley,* and *Duncan & Miller,* for complainants. *Bacon & Rutherford* and *Hill & Harris,* for respondents.

SPEER, J. Brown Bros. were dealers in dry goods and kindred merchandise, at Fort Valley, in this district. On the seventeenth of October, 1885, they made an assignment, having previously, by divers deeds of mortgage purporting to incumber their stock in trade, attempted to prefer certain favored persons whom they pretended were creditors. The remnant of the goods, assigned for the general creditors, was not adequate for the payment of the firm's liabilities; in fact, it was a scarcely appreciable moiety of a large and valuable assortment of merchandise, which had been composed of the identical articles to procure which the debts of the defaulting firm had been created.

[1] See note at end of case.

On October 20, 1885, Jaffrey & Co. and Hochstatder Bros. filed a bill against Brown Bros., (Emile and Charles Brown, partners;) Henry C. Harris, their assignee; Rosalie and Pelagia Brown, their wives; Gustave Brown, their cousin; and Pauline Binswanger, their aunt. Complainants averred that, by false and deceitful representations of their solvency, Brown Bros., insolvent at the time, obtained credit; these representations were made with the intention to defraud complainants; that the assignment is null and void; that the assignee holds the goods so bought as a trustee for complainants; that all the mortgages purporting to secure the assignee and relatives of Brown Bros. in the sum of $11,361.50 were fraudulent, and made to delay and defraud the creditors, and were without consideration. They charge Harris, the assignee, with collusion in the fraud. They pray that he and the co-respondents be enjoined from proceeding under the assignment; that a receiver be appointed, and that he be required to keep the goods bought from Jaffrey & Co. and Hochstatder Bros. separately from the rest; and that the proceeds arising from the sale of such goods be specially appropriated to pay the claims of this class of creditors for the purchase money. They also pray that the assignment and mortgages so fraudulently executed be declared null and void, and ask for general judgments, and for general relief. Discovery is waived.

The respondents, in answering the bill, deny its criminatory allegations; assert the validity of the assignment; of all the debts evidenced by mortgages to the kindred of Brown Bros., and the other preferences.

The receiver, having been appointed under order of the court, took possession of the assets of the firm, sold the stock, made collections, and has paid into the registry of the court $6,144.44, which he reports to be the proceeds. He also reports that one D. J. Baer, an intervening party to the bill, and a creditor of Brown Bros., is indebted to him as receiver in the sum of $1,576; this sum being the difference between the price brought by a portion of the stock at the receiver's sale and the price bid for it by Gustave Brown, at the instigation of Baer, and who was bidding for and in concert with the latter.

Many parties complainant were made by intervention. These were general creditors. W. R. Singleton & Co. and Lyon & Co. also claim a special lien on a portion of the goods for their purchase price, with allegations equivalent to those of Jaffrey & Co. and Hochstatder Bros.

At the last term the entire cause was referred to a master, with directions to report the "nature, extent, validity, and dignity of all liens, and to ascertain what amounts should be paid out of the fund in court to each of said liens; also what amounts are due and to be paid to each party not claiming a lien, whether they claim title to specific goods or not." The controversy between the receiver and D.

J. Baer was specially excepted from the reference, and reserved for determination by the court.

The master filed his report in accordance with the order of the court. He reports: (1) That the assignment to H. C. Harris is void. (2) That Brown Bros. were not insolvent on the eleventh day of August, 1885. (3) The mortgages and the claims of Rosalie and Pelagia Brown are void, because of their fraudulent character, and because of their imperfect execution. (4) The claim of Gustave Brown, for services rendered as a clerk, is rejected, and the mortgage purporting to secure it is found void. The claim of Gustave Brown for $750, due on two notes made in February, 1884, is allowed to be paid *pro rata* with other general creditors. (5) The claim of Pauline Binswanger for $1,200, and the mortgage to secure it, is rejected. (6) The claim of Morris Willard for $1,000 is allowed, but the mortgage to secure it is rejected. (7) The claim of Henry Harris for $600 on the note dated March 11, 1885, and for $611.56 on another note of the same date, are allowed, but the mortgage to secure them is held invalid. Another claim of Henry C. Harris, with note dated February 1, 1885, and payable on the ninth of November of that year, with a mortgage to secure it, is reported to be a valid claim, and the mortgage is also held valid. (8) The claims of E. S. Jaffrey & Co. and Hochstatder Bros. are recognized as valid, but the specific claims made that the fund arising from the sale of the goods sold by them are disallowed, and they are placed on the same footing as the general creditors; and so with the claims of W. H. Lyon & Co. and of W. R. Singleton & Co. (9) The master finds that D. J. Baer and Gustave Brown are liable, and should pay the receiver the sum of $1,576 for their refusal to take the bid made by Gustave Brown for Baer at the receiver's sale.

To this report exceptions are filed by D. J. Baer, E. S. Jaffrey & Co., W. R. Singleton & Co., W. H. Lyon & Co., W. D. Nottingham, receiver, Morris Willard, Cohen, Feibleman & Co., and Henry C. Harris.

In the determination of exceptions to a report of this character, the presumptions are in favor of the findings of the master. They will not be disturbed unless shown to be erroneous. *Lockhart* v. *Horn*, 3 Woods, 542. It is generally not the province of the court to investigate the items of account. The report of the master is received as true, where no exceptions are taken, and the exceptions are to be regarded so far only as they are supported by the special statements of the master, or by evidence which ought to be brought before the court by a reference to the particular testimony. *Harding* v. *Handy*, 11 Wheat. marg. p. 126.

In *Bridges* v. *Sheldon*, 7 Fed. Rep. 34, 35, Judge WHEELER, of the district of Vermont, holds:

"There is no doubt about the power of a court of equity to revise the report of a master, by supplying facts material, which are shown by the evidence,

but not stated in the report, by setting aside the finding of facts, not shown by any evidence, or which are contrary to the evidence, and when errors in law have controlled or influenced the finding of material facts; but this revisory power of the court has never been considered as covering a right for a party to appeal from the master to the court upon disputed questions of fact determined by the master as matters of fact, upon conflicting testimony;" citing *Green* v. *Bishop*, 1 Cliff. 186.

The power of the court to set aside the report of the master is undeniable, but it is not to be exercised except for good cause; and mere differences of opinion as to the weight of evidence, where there is a substantial conflict, is not such good cause. *Bridges* v. *Sheldon*, 18 Blatchf. 295, 507; S. C. 7 Fed. Rep. 17.

The report of the master under consideration evinces very exhaustive, and conscientious effort to ascertain the truth of the issues involved, and his findings not excepted to will be approved as a matter of course.

With relation to the claim of the receiver, to the effect that his trust was injured either by the meddlesome interference of Baer at the sale, or his refusal to pay his bid, made for him by Gustave Brown, we hold that the master had no jurisdiction of this question. By the order of reference it was reserved for the finding of the court. The receiver, by order of the court, was directed to protect the integrity of the fund in his hand. He presents a petition after the sale, in which he advises the court that Baer, in co-operation with Gustave Brown, by their unwarrantable officiousness at the sale, and by their refusal to take and pay for the goods bid off by them at 71 cents on the hundred, occasioned the loss to the fund of more than $1,600. The master finds the precise amount, $1,576, and finds a liability against them in this amount. Baer denies the facts, and there is in relation to this issue much conflicting evidence. I think, however, that the preponderance of the proof is sufficient to warrant the court in finding that Baer and Gustave Brown had arranged to bid off the portion of the stock indicated by the receiver; that Brown did the bidding; and that they afterwards refused to comply with their bid, causing the receiver to resell at the reduced price of 50 cents on the dollar. These meddling persons are parties to the bill. They are, and were at the time, before the court,—one as a complainant, and the other as a respondent. They assert the validity of their claims against the fund, which, by their interference, is reduced in an amount greater than the sum of their demands. There had been a valid and *bona fide* bid of 70 cents before their pretended bid of 71 cents. Can it be possible that the court is powerless to protect the fund in its custody from such reckless and damaging conduct by and at the instance of parties to the record before it? I think not. Messrs. Baer and Brown, in the opinion of the court, are jointly and severally liable to the receiver for the full amount of the damage occasioned by their conduct. There are, however, no suitable allegations in the bill to justify a decree against them for this sum. But they

have an interest, as creditors, in the fund before the court; and since they, and not the other creditors, caused the diminution of this fund, there is no equity in the proposition to require the others to pay their *pro rata* share of this loss, and Messrs. Baer and Brown must pay it, as far as their distributive shares will go; that is to say, since the damage which they occasioned is greater than the amount of their claims, they must contribute the sum which otherwise they would receive on those claims, to the other creditors, that they may not suffer from the unwarrantable conduct of Baer and Brown. To this extent the report of the master must be modified.

The finding that the assignment to H. C. Harris is void; that the mortgages and claims of Rosalie and Pelagia Brown, the claim of Gustave Brown for services as a clerk, the claim of Pauline Binswanger, and the mortgage of Henry C. Harris, to secure his claim evidenced by two notes,—one for $600 and the other for $611,—is confirmed. So, also, is the finding that the claim of E. S. Jaffrey & Co., and Hochstatder Bros., and all the general creditors, valid. The finding that the $1,600 claim of H. C. Harris, with the mortgage to secure it, are valid, is confirmed. The two notes of H. C. Harris, before mentioned, and found not secured, will be classed and paid *pro rata* with the general indebtedness of the firm. To the mortgage for $1,600 will be added 10 per cent. for counsel fees.

Morris Willard presents a claim for $1,000, evidenced by a note of Brown Bros., dated February 11, 1885, and payable one day after date; also, a mortgage intended to secure it. This mortgage was dated February 20, 1885, but was not recorded until the fourteenth day of October of that year. It remained in the possession of the wife of one of the firm. The property which it purports to convey is described as follows: "Our entire stock of dry goods, boots, shoes, hats, clothing, and notions, and such other goods as are usually kept in a first-class country store." There is no further indication of the property, nor is there any sort of designation of the whereabouts of this personalty. A mortgage must clearly indicate the property upon which it is to take effect. Code Ga. § 1955. The cases relied on by respondents' counsel, (*Nichols* v. *Hampton*, 46 Ga. 253, and *Welsh* v. *Lewis*, 71 Ga. 388,) both contain descriptions more explicit and definite. Nor do we think there is any sufficient delivery of the mortgage to make it operative against the debts of other creditors. It was not delivered to Morris Willard, but to the wife. As a *feme covert*, she must be regarded as *sub potestate viri*, and her possession was the possession of her husband. There is no sufficient proof of the consent of the husband to this pretended agency on her part. Morris Willard is the brother-in-law of Brown, and the whole aspect of the affair has a fraudulent coloring. The mortgages to all the relatives of the defaulting firm, viz., to Pelagia, Rosalie, and Gustave Brown, to Pauline Binswanger, to Morris Willard, and to H. C. Harris, the assignee, were recorded Oc-

tober 14th, three days before the assignment. The suppression of these mortgages until this critical moment is a badge of fraud as to creditors, and they will be denied validity and effectiveness as liens upon the property of debtors. The report of the master as to the Morris Willard matter is therefore confirmed. He will be entitled, as a general creditor, *pro rata* with the others, for the principal and interest of his claim, but he has no lien on the stock.

It is for the same reasons, and for the additional reason that it was not recorded as required by law, that the report of the master disallowing the mortgage given by Brown Bros. to H. C. Harris, on the eleventh day of March, 1885, is confirmed.

The complainants Jaffrey & Co., Hochstatder Bros., Lyon & Co., and W. R. Singleton & Co. insist that they were induced by the false, fraudulent statements and conduct of Brown Bros. to sell them certain goods on credit; that at the time Brown Bros. were insolvent,— had neither the ability nor the intention to pay for the goods so purchased. They therefore insist that no title passes by such a sale, and they pray that the receiver keep a separate account of the proceeds arising from the sale of the goods sold by each of them, respectively. This was done under order of the court. It remains to be determined whether these complainants are entitled to the specific relief they seek. The master reported against the special claims set up by this class of complainants. He finds first that Brown Bros. were not insolvent at the time of the alleged fraudulent purchase. He further finds that these complainants stand upon the same footing as other creditors, and that their special claim is without validity. In the determination of the exceptions to this portion of the master's finding there is necessitated a review of the law controlling claims of this character.

In *Landauer* v. *Cochran*, 54 Ga. 533, the supreme court of this state held "that, where goods are obtained from a party by fraud, no title passes, and the right of the vendor to retake the same by a claim is superior to the lien of an attachment against the fraudulent vendee, levied at the instance of one of his creditors."

In *Crittenden* v. *Coleman*, 70 Ga. 295, the facts are very similar to the evidence before the master in the case under consideration. The court held "that title never passed because fraud procured the sale, and that the complainants might recover the goods so sold from a purchaser from the assignee of the fraudulent debtor, where the circumstances were sufficient to put such purchaser on notice."

In *Talcott* v. *Henderson*, 27 Amer. Rep. 501, it is held that "a contract for the purchase of goods on credit, made with intent on the part of the purchaser not to pay for them, is fraudulent; and, if the purchaser has no reasonable expectation of being able to pay, it is equivalent to an intention not to pay. But when the purchaser intends to pay, and has reasonable expectations of being able to do so, the contract is not fraudulent, although the purchaser knows himself

to be insolvent, and does not disclose it to the vendor, who is ignorant of the fact." See, also, note, 504.

In *Donaldson* v. *Farwell*, 93 U. S. 633, the supreme court of the United States, Mr. Justice Davis delivering the opinion, holds as follows:

"The doctrine is now established by a preponderance of authority that a party not intending to pay, who, as in this instance, induced the owner to sell him goods on credit by fraudulently concealing his insolvency, and his intent not to pay for them, is guilty of fraud which entitles the vendor, if no *innocent* third party has acquired an interest in them, to disaffirm the contract, and recover the goods. *Byrd* v. *Hall*, 41* N. Y. 647; *Johnson* v. *Monell*, Id. 655; *Noble* v. *Adams*, 7 Taunt. 59; *Kilby* v. *Wilson*, Ryan & M. 178; *Bristol* v. *Wilsmore*, 1 Barn. & C. 514; *Stewart* v. *Emerson*, 52 N. H. 301; Benj. Sales, § 440, note of the American editor, and cases there cited."

It appears from the evidence that Emile Brown, one of the firm of Brown Bros., for the purpose of obtaining credit from Jaffrey & Co. and Hochstatder Bros., gave them a statement of the financial condition of the firm, and referred them to a statement previously made to Bates, Reed, and Cooley, all showing a prosperous solvency. Reference to the numerous mortgages to various relatives of the Brown Bros. and to H. C. Harris was studiously avoided. These mortgages aggregated many thousand dollars. No reference was made to the indebtedness to Harris. When Harris was telegraphed an inquiry about their solvency, he replied with vague generality, but made no mention of his liens on their stock. It was their duty to disclose the existence of these incumbrances. Such suppression of important facts, when direct inquiry was made, was actual fraud. The New York merchants were entitled to know of the existence of these mortgages. It is not to be supposed that had they known what a cloud rested on the prospects of the house of Brown Bros. that credit would have been extended to them. The concealment of material facts which the vendor was entitled to know was fraudulent, and in this case will vitiate the sale. The assignment was made on the fourteenth of October. The assets of the firm, including all the goods unpaid for, amounted to $16,627.79. Their indebtedness was over $29,000. Mortgages to the extent of $9,000, some of them to enable Rosalie and Pelagia, their wives, to consummate the felicity contemplated in antenuptial contracts entered into many years ago in far away Alsace and Lorraine, were prepared. The mortgages were never recorded until the eve of the assignment. At the same time defendants went through their books, and marked many of their large solvent debts as paid, and deposited their notes with their brother and their banker for their own benefit, and never delivered them to the assignee, or to the receiver, under the order of the court.

Gustave Brown, to whom one of the mortgages found to be fraudulent was given, after the receiver was appointed was found in the possession of a large amount in notes and accounts, which he was secretly collecting, but which, under a threat of punishment, were

turned over to the receiver. Can it be doubted that this state of facts was fraudulent as to creditors, and, if the goods were still in the possession of the defaulting debtors, that the sales might be rescinded, and the goods retaken by the vendors? All sales procured by fraud are voidable, at the option of the vendor. Code Ga. §§ 2751, 3178.

While fraud may not be presumed, slight circumstances may be sufficient to carry conviction of its existence. Here the evidence leads the mind irresistibly to the conclusion that there was a deliberate purpose on the part of Brown Bros. to pile up goods, the property of their creditors, and, having made sufficient accumulations, to convey the same to their relatives, and thus to "break full-handed," —a scandalous performance, for which the powers of criminal courts alone afford adequate punishment.

The claim of W. R. Singleton & Co. stands upon precisely the same footing, except that the defendants made no express representations of their solvency at the time of the last purchase. They had, for a long time, been customers of Singleton & Co. They had repeatedly represented themselves as perfectly solvent. Theretofore they went in person to Macon, where was Singleton & Co.'s house, to make all purchases. On the fifth of October they forwarded the money to pay a small account already due. They were too busy, they said, to visit Macon, but desired Singleton & Co. to send down a line of samples, as they wished to make a large purchase. The samples were sent, and the superior class of goods selected were shipped to the busy, and indeed overworked, firm. This was done on the seventh of October. Seven days thereafter these exemplars of industry and probity assigned, and the unbroken packages of Singleton & Co.'s goods were found in their possession by the receiver. Singleton & Co. are entitled to retake their goods. Lyon & Co. stand upon the same footing, and the sums realized under the order of the court, by the sale of these separate lots of goods belonging to this class of creditors, must be appropriated to pay the purchase money thereof.

All of the facts which tend to show fraud, when taken in connection with the great preponderance of liabilities over assets, also tend to show the insolvency of Brown Bros. at the time of these purchases. I think that the master drew an erroneous conclusion from admitted facts when he found them solvent. Nor do I find that there was undue delay in the offer to rescind these contracts by complainants. They could not be held as obliged to rescind until the secret mortgages were recorded, and until they ascertained that a fraud was in process of perpetration. Immediately thereafter the bill was filed; and while the allegations and prayers were not as ample in the outset as they might have been, this may be cured by the amendment offered, which, in view of the imperfect knowledge of the facts, necessarily had by counsel at the time the bill was filed, is now allowed.

The court appreciates sensibly the great assistance rendered by the master, in evolving the truth from the voluminous and complicated

transactions considered. The report is confirmed, save in the matters hereinbefore set forth.

Let all creditors who have made proof of their claims be made parties, and receive their distributive shares of the fund, in accordance with the ruling hereinbefore made; let the calculations be revised accordingly; let the costs be withdrawn from the fund in hand before the distribution is made; and the decree is so ordered.

### NOTE.

SALE—FRAUD. A sale procured by fraud or misrepresentation may be avoided by the seller, and the property retaken by him as his own, Sleeper v. Davis, (N. H.) 6 Atl. Rep, 201; Ensign v. Hoffield, (Pa.) 4 Atl. Rep. 189; Neff v. Landis, (Pa.) 1 Atl. Rep. 177; Hanchett v. Kimbark, (Ill.) 7 N. E. Rep. 491; S. C. 2 N. E. Rep. 512; Doane v. Lockwood, (Ill.) 4 N. E. Rep. 500; Goodwin v. Wertheimer, (N. Y.) 1 N. E. Rep. 404; Bussinger v. Bank of Watertown, (Wis.) 30 N. W. Rep. 290; Lee v. Simmons, (Wis.) 27 N. W. Rep. 174; Carl v. McGonigal, (Mich.) 25 N. W. Rep. 516; Oswego Starch Factory v. Lendrum, (Iowa,) 10 N. W. Rep. 900; Amer v. Hightower, (Cal.) 11 Pac. Rep. 697; Taylor v. Mississippi Mills, (Ark.) 1 S. W. Rep. 283; unless it was subsequently sold by the fraudulent vendee to one who purchased in good faith, and for a valuable consideration, Sleeper v. Davis, (N. H.) 6 Atl. Rep. 201; Neff v. Landis, (Pa.) 1 Atl. Rep. 177; Hanchett v. Kimbark, (Ill.) 7 N. E. Rep. 491; S. C. 2 N. E. Rep. 512; Goodwin v. Wertheimer, (N. Y.) 1 N. E. Rep. 404; Perkins v. Anderson, (Iowa,) 21 N. W. Rep. 696; Oswego Starch Factory v Lendrum, (Iowa,) 10 N. W. Rep. 900.

It may be retaken from the possession of an officer who holds it under an attachment or execution against the fraudulent purchaser, Ensign v. Hoffield, (Pa.) 4 Atl. Rep. 189; Oswego Starch Factory v. Lendrum, (Iowa,) 10 N. W. Rep, 900; Taylor v. Mississippi Mills, (Ark.) 1 S. W. Rep. 283. The assignee for benefit of creditors is not a *bona fide* purchaser for value, and takes no better title than his assignor, the fraudulent vendee, Goodwin v. Wertheimer, (N. Y.) 1 N. E. Rep. 404; Lee v. Simmons, (Wis.) 27 N. W. Rep. 174.

The purchase of goods with the intention of not paying for them is a fraud which will justify the avoidance of the sale, Sleeper v. Davis, (N. H.) 6 Atl. Rep. 201; Farwell v. Hanchett, (Ill.) 9 N. E. Rep. 58; Hanchett v. Kimbark, (Ill.) 7 N. E. Rep. 491; S. C. 2 N. E. Rep. 512: Lee v. Simmons, (Wis.) 27 N. W. Rep. 174; Carl v. McGonigal, (Mich.) 25 N. W. Rep. 516; Oswego Starch Factory v. Lendrum, (Iowa,) 10 N. W. Rep. 900; Taylor v. Mississippi Mills, (Ark.) 1 S. W. Rep. 283. So are misrepresentations as to solvency, and the concealment of insolvency, Ensign v. Hoffield, (Pa.) 4 Atl. Rep. 189; Hanchett v. Kimbark, (Ill.) 7 N. E. Rep. 491; Lee v. Simmons, (Wis.) 27 N. W. Rep. 174; Oswego Starch Factory v. Lendrum, (Iowa,) 10 N. W. Rep. 900. But the mere fact of the purchaser's insolvency does not render the purchase fraudulent, unless it was made with no intention or expectation of paying for them, Dalton v. Thurston, (R. I.) 7 Atl. Rep. 112; Mack v. Adler, (Ark.) 2 S. W. Rep. 345.