Campbell, Chief Justice,
delivered the opinion of the court:
This case was before this court and judgment was rendered therein in June, 1896, which, upon appeal by the defendants, was reversed by the Supreme Court, 165 U. S., 330. The findings of fact in the original case, see 31 C. Cls., 395, are again adopted.
After the reversal the claimant took no further steps, until in December, 1897, his attorney filed a motion in this court to again refer the case to a referee, and in March, 1908, filed a motion to refer the case to the auditor of the court as referee, which was overruled in May, 1909.
In December, 1911, claimant’s attorney filed what are called “ revised exceptions ” to the report of Referee Donovan (which was filed herein on June 8, 1891), and upon which the former judgment of the court was predicated. After filing these “revised exceptions” the claimant proceeded to take the testimony of one John F. Alexander, an engineer, in September, 1903, for the ostensible purpose of proving certain measurements which he claimed were not taken into account by the referee’s report and against which report, in the particulars referred to, there has been no exception filed prior to the former hearing of the cause. The defendants move to strike from the files and record in this case the said deposition.
We decline to consider the testimony of the said Alexander, and direct that his deposition be stricken from the record in this case for several reasons: First, the deposition was taken without the permission of the court being asked or granted after the case, upon claimant’s application (or at least with claimant’s consent), had been referred to a referee, who made and filed a report, as above stated, in June, 1891. It is not allowable, by this method, to reopen a case which has *12 once been submitted to the court on a referee’s report where the reference was by the claimant’s consent and where, as in this case, the court has refused the claimant’s application to again refer it.
In the absence of a rule of this court on the subject we are to be governed by rules in similar proceedings of reference to referees and masters adopted by other Federal courts, and, as was said in Harding v. Handy, 11 Wheat., 103, 126: “The report of the master is received as true when no exception is taken; and the exceptions are to be regarded so far only as they are supported by the special statements of the master, or by evidence, which ought to be brought before the court by a reference to the particular testimony on which the exception relies. Were it otherwise, were the court to look into the immense mass of testimony laid before the commissioner, the reference to him would be of little avail.” Farrar v. Bernheim, 75 Fed., 136; Jeffrey v. Brown, 29 Fed., 476; Equity Rule, United States Supreme Court, 83. Nor is it allowable to assail a referee’s conclusions by testimony, which was not in the record when he made his report, where no reason is given for not having adduced the testimony for his consideration prior to his report and where the case has not been reopened for additional testimony by leave of court.
It was said in Hurst v. Hurst, 12 Federal Cases, No. 6930:
“It was the duty of the court to examine the accounts and documents laid before the referees, to see if they had refused to allow the credits claimed by the plaintiff. In such an examination no new evidence can be admitted; and in deciding upon that which was before the referees, if they have drawn conclusions from conflicting evidence different from that which my mind would approve, it would be improper, on that account, to say that their conclusion is wrong.”
In Bridges v. Sheldon, 7 Fed., 17, 34, the court said:
“There is no doubt about the power of a court of equity to revise the report of a master by supplying facts material which are shown by the evidence, but not stated in the report, by setting aside the findings of facts not shown by any evidence, or which are contrary to the evidence, and when errors in law have controlled or influenced the finding of material facts; but this revisory power of the court has never been considered as covering a right for a party to appeal from the master to the court upon disputed questions *13 of fact, determined by the master as matters of fact upon conflicting testimony.”
In Jeffrey v. Brown, 29 Fed., 476, 480, the following language is used, which is apposite to the report of the referee in this cause: “The report of the master under consideration evinces very exhaustive and conscientious effort to ascertain the truth of the issues involved, and his findings not excepted to will be approved as a matter of course.” Exceptions, therefore, should be confined to the referee’s findings upon the evidence before him and are not to be aided by evidence which was not before him, certainly where the court has not authorized the taking of new evidence or reopened the case (authorities cited supra). Besides, if it is permissible to introduce new evidence to impeach a referee’s report, it is incumbent upon the party seeking to take or to introduce it, before it will be allowed, to give a good or at least a reasonable excuse for his failure to produce the evidence in the first instance before the referee. The evidence here sought to be introduced is a calculation based upon data claimed to have been procured from the District engineer’s office. No reason is shown why that evidence, if it be evidence at all, was not procurable and presented to the referee. If it could be found in 1903 — that is, more than 10 years after the referee’s report — it is apparent that it must have been available at or before the time of the report; and, as was pertinently held in Murphy v. Shepardson, 60 Wis., 412, where a delay in discovering additional evidence and a failure to produce it are inexcusable, a request to introduce the additional evidence and refer the case will not be granted.
If the rule were otherwise than we have stated and if the testimony of said witness were before us we would be constrained to hold that it establishes no fact pertinent to the exception or contrary to the referee’s findings and report. The witness was examined to impeach the conclusions of the referee as to certain grading alleged to have been done on Pennsylvania Avenue and on North Capitol Street under contracts made in 1872 — over 30 years ago. The method adopted is to take what is supposed to be the records of the engineer department of the District of Columbia of the original surface of the ground and the grade which has been *14 established and from these data to calculate the extent of the grading required to reach the grade. The witness makes and attaches to his deposition maps of Pennsylvania Avenue and North Capitol Street, and of the Pennsylvania Avenue map says that he “prepared it from the notes furnished by the engineer department of the District of Columbia, being reply of the commissioners filed in the court February 25, 1899, and November 11, 1899.” Without meaning to say that the said replies of the commissioners furnished the requisite data, but assuming they did, we find that the said witness computed the amount of excavation “from First to Ninth Streets to bring it to the present grade,” and does not pretend to compute or show the number of yards of excavation on Pennsylvania Avenue from First to Eighth Streets, whereas the original petition in this case, the original contract between the parties, and the referee’s report all set forth that the excavation in question was from First to Eighth Streets; and as the computation is in gross we could not, if we would, glean any material information from it. As to the North Capitol Street matter, we are not more enlightened than by the other, because whilst the witness attaches what he calls a map of that street, as made by himself from the notes for the fines of his map taken by him from the maps in the surveyor’s office and bases his computation thereon, he yet states that he had not made any comparison between his computation and “those of the District engineer,” because, as he explains, “no data were furnished me, as the street was never completed — I mean the measurements for the street were never completed.” And therein he is in full accord with the findings of the referee, who stated (report, p. 3), “No final measurement of the said work appears to have ever been made, although it is shown that the work was not fully completed for several months after date of measurements.” Besides this, it is also shown by the referee’s report (p. 12) that “the claimant has ignored the measurements of the work as made by the engineer of the board of public works and relies almost solely upon the measurements certified by A. O. Babcock, major of Engineers, United States Army, in charge of public buildings and grounds,” when, as the referee points out (p. 13), the contract *15 provides for payments upon monthly estimates of the chief engineer of public works.
In view of what we have said and of said report it is manifest that said deposition, if admitted, furnishes no information upon which a definite finding could be made, and that the claimant was informed by the report itself, made many years ago, of conclusions which, if not correct, might have been otherwise if evidence had been introduced by claimant before the referee upon which different conclusions may have been reached. The attempt to do so now but illustrates the propriety of the general rules which we have announced and which are sustained by the authorities above cited. It follows, therefore, that the motion to strike the deposition of Alexander from the files should be granted, and an order will be issued that said deposition be stricken from the record of this cause. The revised exceptions are overruled.
When the case was before this court on the former hearing a judgment was rendered based upon the referee’s report for “$5,119.32 as due and payable February 1, 1872, and $1,066.06 as due and payable April 1, 1876, within the intent and meaning of the acts of February 13, 1895, and June 6, 1880;” whereas the judgment should have been (according to the mandate of the Supreme Court in this case) for $14,418.77, which includes $7,306.25 claimed by Theodore Sheckles and $927.10 the amount assigned to S. J. Ritchie; and the claimant would have judgment for that amount less said amount of $7,306.25, except for the defendants’ counterclaim of $21,123.18, as shown by the referee’s report.
This counterclaim should be reduced in the amount of $7,306.25, the sum used by defendants to liquidate the claim of Theodore Sheckles and in the additional amount of $7,112.52 due McNamara after deducting the Sheckles claim, making an aggregate of $14,418.77 which should be deducted from said counterclaim, leaving a balance still due the defendants from McNamara; and applying the balance due him and deducting the same from the balance of the counterclaim left after said two deductions we will enter judgment in favor of the defendants in this cause for the sum of $6,704.41 with interest thereon at 6 per cent per annum from June 22, 1896, the date of the original judgment in this cause.