AMERICAN BELL TEL. CO. v. WESTERN UNION TEL. CO. et al.[1]

(Circuit Court of Appeals, First Circuit. September 3, 1895.)

No. 53.

1. EQUITY PRACTICE—RIGHT OF PLAINTIFF TO DISMISS—REFERENCE TO MASTER.
　　After the parties have, by a stipulation, agreed to refer the cause to a master, "to hear the parties, report the facts, and his rulings on any question of law arising in the case," and the court has entered a decree of reference in accordance therewith, the defendant acquires a right to have a hearing before the master and to obtain his report and decision, and the plaintiff consequently thereby loses his right to dismiss the cause without prejudice. 50 Fed. 662, reversed.

---

[1] Rehearing pending.

2. SAME.

Even if it were conceded that the mere stipulation, and the decree ordering the reference, would not, of themselves, take away the right of dismissal, that right would be lost after a full hearing has been had, and after the master has communicated his decision to counsel.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a bill by the Western Union Telegraph Company and others against the American Bell Telephone Company for discovery and accounting in respect to certain rentals upon patented devices, alleged to be due under a contract. The case was heard in the circuit court upon complainants' motion to dismiss the cause without prejudice, which was granted. 50 Fed. 662. Defendant appeals.

Ebenezer Rockwood Hoar, William G. Russell, and James J. Storrow, for appellant.

John F. Dillon and Josiah H. Benton, Jr., for appellees.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

WEBB, District Judge. The Western Union Telegraph Company, the American Speaking Telephone Company, the Gold & Stock Telegraph Company, and the Harmonic Telegraph Company, on and prior to November 10, 1879, owned, or claimed to own and control, a number of patents issued by the United States, covering and embracing numerous valuable inventions, appliances, and methods, useful in the art of transmitting messages by telephone, including the right to transmit call signals by electricity over wires in connection with the telephone business; and they had made many contracts with divers persons, granting licenses for the use of such appliances, methods, and inventions, upon payment of certain agreed rentals. At the same time the National Bell Telephone Company owned, or claimed to own, a number of patents, granted by the United States, covering instruments, inventions, and methods useful and valuable in the art of transmitting messages by telephone, and also claimed the right to transmit by electricity, over wires, call signals, in connection with its telephone system. And this company also had entered into many contracts with corporations and individuals, granting to such corporations and individuals, in consideration of the payment of certain rentals, the right to use the instruments, inventions, and methods by them owned, or claimed to be owned. On said 10th day of November, 1879, controversy having arisen between the National Bell Telephone Company, on the one side, and the other corporations above named, on the other side, with respect to the rights and powers of each, and of the grantees of each, in the business of transmitting messages by telephone, and litigation as to their respective rights having been initiated by and between the parties, and other burdensome litigation being threatened and probable, the corporations interested entered into negotiations for a settlement and adjustment of all such matters of controversy. Those negoti-

ations resulted in a written agreement and contract between the Western Union Telegraph Company, acting in its own behalf and in behalf of the American Speaking Telephone Company, the Gold & Stock Telegraph Company, and the Harmonic Telegraph Company, the complainants in this case, as party of the first part, and the National Bell Telephone Company, as party of the second part, which said agreement and contract in writing was executed, ratified, and approved by all the parties. Since the said 10th day of November, 1879, the National Bell Telephone Company has transferred all its property and rights to the American Bell Telephone Company, a corporation under the laws of the state of Massachusetts, and the said American Bell Telephone Company is made the sole defendant in this suit.

The written agreement between the parties contains a large number of provisions and particulars, which, for present purposes, do not need to be referred to in detail. It is enough to say that under that contract the defendant became bound and promised to conduct certain business in regard to telephones, letting instruments, granting licenses, and other things, for the benefit of all parties to the agreement, upon carefully specified terms, and to collect rentals, render accounts, and to pay over to the others interested a proportion of the moneys collected. The complainants became dissatisfied with the accounts rendered and the amount paid to them, and claimed that under the contract they had an interest in, and a right to an account of and a share in, the profit of certain business of the defendant, and that a large amount was due to them,—how much, they had no means of ascertaining. The defendant, on the other hand, denied that such business was embraced in the contract, and that the complainants were entitled to participate in the profits of the same, and insisted that it had, in all respects, fully and justly kept and performed all its obligations under the contract. To enforce their claims, and to compel performance of what they demanded as their due, the complainants have commenced this suit; setting out in their bill the written agreement of November 10, 1879, and praying for a discovery and an account, and for a decree for the sum shown to be due to them. The American Bell Telephone Company appeared and answered, admitting the contract or agreement, and its obligation to perform all the undertakings of the National Bell Telephone Company under it so made, but not admitting the entire accuracy of the copy of that agreement as set out in the bill of complaint. The defendant, in its answer, declared that all its said obligations had been promptly, fully, and justly performed, and that it had paid to the complainants their full share and proportion of all rentals and profits. It further denied the right of the complainants to any of the relief sought, and it referred to copies of licenses granted to, and of contracts made with, other parties for the transaction of telephone business; also, to schedules of all corporations to whom it had granted licenses or with whom it had made contracts for the use of telephones; but said copies and schedules do not appear to have been, in fact, filed till during the hearing before

the master. The bill of complaint was filed November 16, 1883; the answer, June 30, 1884; and the replication, November 19, 1884. At the May term, 1886, of the circuit court, on the 24th of May, the following agreement was filed:

"Agreement for Reference to a Master.

"It is agreed that the above-named cause may be referred to the Hon. John Lowell, as master, to hear the parties, report the facts, with such part of the testimony as either party shall request, and his rulings on any question of law arising in the case.                              W. G. Russell,

"For Defendant.
"Dillon & Swayne,
"Hale & Walcott,
"For Complainants."

Thereupon, on May 28, 1886, the following order of court was entered:

"And now, to wit May 28, 1886, upon agreement of the parties filed, it is ordered that the above cause be referred to Hon. John Lowell, as master, to hear the parties and report the facts, with such part of the testimony as either party shall request, and his rulings on any question of law arising in the case."

The cause was thence continued to the October term, 1890, when, on February 19, 1891, the master filed his report, with accompanying papers, and on the next day the following agreement was filed:

"It is agreed that the paper filed in this case as the master's report shall be taken into his custody, and considered not filed (with accompanying documents).                              Geo. S. Hale, for Plaintiff.

"W. G. Russell, for Defendant."

And thereupon the clerk delivered to the said master that report and accompanying papers. This proceeding, in his final report, filed August 11, 1891, the master thus explained:

"After I had filed a report in court, the parties reminded me that they had agreed that a draft report should be furnished them for their suggestions before the final report was made and filed. Therefore the report was taken from the files by consent, and several hearings were had before me; and I have, in some particulars, modified my report accordingly."

The cause was continued to the May term, 1891, of the circuit court, and on the 1st day of June, 1891, the following petition was filed:

"The Western Union Telegraph Company, complainant, showeth that your petitioner, having exhibited its bill in this honorable court against the above-named defendant, which has appeared and put in its answer thereto, your petitioner is now advised to dismiss its said bill. Your petitioner therefore prays that the said bill may stand dismissed out of this court without prejudice, but with costs to be taxed by the clerk.

"Western Union Telegraph Company,
"By J. H. Benton, Jr., Attorney."

On this motion no action was at once taken. August 11, 1891, the master filed his report, with accompanying papers. In it he states that in June the counsel for the complainants notified him that they had filed in court a petition to dismiss the bill, and asked him to make no report pending said petition, but that he considered it his duty to proceed, and leave to the court all questions arising

out of the petition.    October 19, 1891, the following joinder was filed:

### "Joinder in Motion to Dismiss.

"The American Speaking Telegraph Company, the Gold & Stock Telegraph Company, and the Harmonic Telegraph Company join in the petition for leave to dismiss heretofore filed by the Western Union Telegraph Company.
"By J. H. Benton, Jr., Attorney."

November 26, 1892, a decree was entered dismissing the bill of complaint, without prejudice, upon payment of costs.    From this decree the American Bell Telephone Company appealed, and duly perfected its appeal.

The single question contested is the right of the complainants thus to dismiss their bill.    To the discussion of this question great learning and extensive examination of authorities have been devoted. But in the opinion of this court the question lies in narrow compass.    All the authorities recognize that in the progress of a suit a stage may be reached when the right of the complainant to end the cause by dismissing his bill ceases.    With sufficient exactness, the decisive point may be said to be when the cause has proceeded so far as to give the defendant rights of which he would be deprived by allowing the dismissal of the bill by the complainant on his motion. Such rights were acquired in this cause by the reference of the parties to the master, approved and confirmed by the decretal order of the court.    The defendant, by the concurrent force of the stipulation of the parties to refer to the master "to hear the parties, report the facts, and his rulings on any question of law arising in the case," and of the order of court, acquired the right to have the hearing before the master, his report, and the decision of the master thereupon. Neither party could, at his pleasure, revoke or rescind the reference so made and confirmed.    Even if the right of the defendant to have the cause go on was not fixed by the stipulation and the order of the court, which is not admitted, it was secured by the hearing before the master pursuant to that stipulation and order, at which the parties produced their evidence at great length, presented their arguments, and submitted the case to the master for his determination. But, further than this, the master reached a decision, and communicated it to the parties, or their counsel, before any suggestion by the complainants of a desire to dismiss their bill.    It was only after it became known to them that the master's decision was in favor of the defendant, and adverse to them, that they sought to escape, and to deprive the defendant of the award of a tribunal of mutual selection. It is not by this meant that the report filed on the 19th of February, 1891, and afterwards withdrawn, is regarded as the technical report of the master.    But it was a draft report, the contents of which were made known to the parties precedent to the ultimate report solely to give them opportunity to suggest errors, to ask revision and reconsideration, to take exceptions, and to do whatever might be necessary to put them in position to contest the approval and confirmation of the report as finally made.    The record shows that some of those steps were taken before any motion to dismiss was filed;

that after the draft report was submitted and read to counsel at his office, and at the complainants' request, 30 days were allowed by the master for each party to submit objections or suggestions for alterations of said report, which time was several times further extended at the request of the plaintiffs' counsel; and some time near May 7th the counsel of both sides filed, and presented to the master, their respective objections and suggestions, and, before the motion to dismiss the bill, counsel on each side filed with the master their reply to the objections and suggestions of the other.    No dissent is made from the view of the circuit court that the master's report cannot be deemed to have been filed till after the petition for leave to dismiss was made by the Western Union Telegraph Company, nor is any account made of the point that in form one only of the complainants signed that petition.    The decision is that at the time the motion was made the complainants had not the right to dismiss their bill.    Upon the effect of a reference like that in this case, see Kimberly v. Arms, 129 U. S. 513, 9 Sup. Ct. 355; Davis v. Schwartz, 155 U. S. 631–637, 15 Sup. Ct. 237.