FARRAR et al. v. BERNHEIM.

(Circuit Court of Appeals, Fifth Circuit. April 21, 1896.)

No. 427.

1. FRAUDULENT CONVEYANCES—RIGHTS OF CREDITORS.

A failing debtor made a voluntary transfer of certain valuable real estate to one F., for the purpose of defeating his creditors. F. held the property until his death, accounting for a time to the debtor for the rents, but afterwards refusing to surrender the property to him; and, after F.'s death, his heirs held the property and collected the rents. Certain creditors of the original owner took judgment against him, levied execution on the land after F.'s death, and caused it to be sold as the property of the judgment debtor, plaintiff buying it in at the sale. Plaintiff then brought suit to establish his title to the land, and, in such suit, proved the facts as to the character of the original transfer, both by circumstantial evidence and by the admission of the parties. *Held* that, although no court would interfere as between the original owner of the land and F., plaintiff, as a creditor of the fraudulent grantor, was entitled to the assistance of a court of equity, and his title should be established.

2. LIMITATIONS—ADVERSE POSSESSION—COLOR OF TITLE.

*Held*, further, that the fraudulent conveyance to F. afforded no beginning point for the running of the statute of limitations in favor of him or his heirs, in the absence of proof of the creditor's knowledge of the facts.

3. PRACTICE—FINDINGS OF MASTER—EXCEPTIONS.

The finding of a master, to whom all the questions of law and fact in a case have been referred, by agreement of the parties, for determination, is not to be set aside or disregarded, unless upon exceptions supported by special statements of the master, or evidence referred to in the exceptions, by which it is shown that the report of the master is unsupported or essentially defective.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Mr. Crawford, for appellants.

Simkins & Simkins, for appellee.

Before PARDEE, Circuit Judge, and BOARMAN, and SPEER, District Judges.

SPEER, District Judge. The record of this cause will make plain the material facts following: In the year 1879, "Reisman & Freeman" was the title of a mercantile firm of the town or city of Ennis. This municipality is in the county of Ellis, and in the state of Texas. The firm dealt in dry goods. The dry goods were vended from a storehouse familiarly known in that community as the "Reisman Corner." The house itself at that time was a wooden structure, and it was situated on lot No. 1 in block No. 11 of the surveyed plan of Ennis. It is this lot which is the object of the controversy the court has heard. The controversy originated in the following manner: In the year already mentioned, Reisman & Freeman failed,—that is to say, they became insolvent; and, as they freely testify, they hastened to dispose of their property, as best they could, in such manner as would most effectually disappoint their creditors in the hope that any of the firm holdings might be subjected to the payment of the firm debts. Among these assets was the Reisman corner. This was conveyed by the deed of the insolvent firm to one Aaronson, and Aaronson paid nothing for it, but testified that he took it merely to defeat the creditors. Then the firm of Reisman & Freeman dissolved, and Reisman purchased Freeman's interest in the lot. Aaronson, at Reisman's request, made a deed of the Reisman corner to one J. R. Farrar, who, like Aaronson, paid nothing. Notwithstanding this, the deed to him recited that Farrar paid $1,500 in cash, and gave his note for $1,000, as the price for the lot. Farrar was not present when Aaronson executed and delivered the deed, for Farrar, to Reisman. It is true that the original note mentioned in the deed as a part of the consideration was prepared for Farrar's signature, but he never signed it, as appeared by the original draft of the note itself, which was produced at the trial, and identified by the attorney who drew it. The character of Farrar's holding is also made evident by the fact that he paid, or accounted for, the monthly rents to Reisman. Moreover, certain executions against Reisman & Freeman were levied on this corner lot. This was after the conveyance to Farrar. Under this levy the property was sold by the sheriff as the property of Reisman & Freeman, and bought in by Farrar. Farrar interposed no claim of any kind as the owner of the property. The evidence makes plain the fact that one month before the sale by the sheriff the debtor Reisman himself paid to the attorney who held these executions the full amount due thereon, and the attorney, at Reisman's request, wrote a transfer of the judgments to Farrar, and delivered the assignment to Reisman's attorney. This was, as already stated, a month before the sale by the sheriff above mentioned. The night that Reisman & Freeman executed the deed to

Farrar, their place of business was closed by an attachment. Besides, Farrar stated to a number of the witnesses, and at different times, that he held the property in question for Reisman. It is true that in 1883 Farrar, being then in possession of the lot, erected upon it a brick storehouse. But it was in evidence that he advanced the cost of this building for Reisman, who, on his part, stipulated that Farrar should appropriate the rents until he should be reimbursed. There is also written evidence to show the character of Farrar's tenure. For instance, this order:

J. W. McNeil: Please pay Joe Reisman one hundred and thirty dollars ($130.00) for two months' rent on saloon.

April 1st, 1884.                                          J. R. Farrar.

This was after the brick building was erected.

It further appears from the testimony of Reisman that during Farrar's tenancy, and since his death, the rents of the property largely exceeded any claim for the advances Farrar might have held against it. It appears that Reisman, several times, attempted to have a settlement with Farrar, in order that he might regain actual possession; and finally Farrar threatened "to shoot the top of Reisman's head off," if he ever mentioned the subject again. After hearing this remark, Reisman preserved an unbroken silence with relation to this topic until after Farrar's death. Farrar died in November, 1888, and his legal representatives, the defendants, are holding the Reisman corner and collecting the rents. It further appears that on the 15th day of March, 1889, Jacob Bernheim & Co. obtained in the district court of Dallas county, Tex., a judgment against Reisman for $1,362.80, with interest and costs of suit. By virtue of this the lot in question was sold, and Charles Bernheim became the purchaser. On the sheriff's title thus obtained, Bernheim brought suit in the circuit court to recover the lot and the rentals thereon; but, owing to technical irregularities, this judgment is not relied on for the purpose of the suit to establish title filed by Bernheim. On the same day, and in the same court, one Max London recovered against Reisman $4,981.66. On this judgment execution was issued the 17th day of April, 1889. The sheriff declining to sell, because of the previous sale to Bernheim, a writ of venditioni exponas, under the Texas practice, was made out on the 14th day of October, 1889; and in obedience to this the sheriff, on the 5th day of November, 1889, again sold the property. Again Charles L. Bernheim became the purchaser, and to him the sheriff gave his official deed. In the meantime Charles L. Bernheim had bought the Max London judgment, and thereafter amended his petition, setting out title he had acquired by the sale under that judgment. The cause was delayed for several years because it was impracticable to serve James Farrar, Jr., who could not be found when he was needed. The cause was transferred, by order of the court, to the equity docket. By consent of all the parties, the questions at issue were referred to H. S. Lathrop, standing master, to hear and determine the same. The master has made his report in favor of the plaintiff. The report was confirmed by decree of the circuit court, and the defendants appealed to this court.

The record of this case is voluminous, but the foregoing statements will, we think, make it evident that the finding of the master and the decree of the circuit court were demanded by the settled principles of equity relative to such a controversy. The defendants the wife and children of Farrar are merely volunteers. They take no greater right than he had, and he had none as against Reisman's creditors. Indeed, the effort to cloak this valuable asset of the insolvent firm so that the creditors were defeated was a flagrant and palpable fraud. As between Reisman and Farrar, no court would interfere, but Bernheim is entitled to the consideration and assistance of a court of equity. The position that the Texas statute of limitations will protect the heirs of Farrar in their enjoyment of the Reisman corner is untenable. It was based upon a fraudulent conveyance, where title did not pass, and where it was not intended to pass. It was merely a fraudulent device to defeat creditors, and affords no beginning point for the statute of limitations, unless, indeed, the evidence had disclosed the fact that the creditors had been advised of the fraud, and then slept over their rights until the bar of the statute had intervened. This does not appear. In the Texas court there are numerous well-considered cases supporting this view. Munson v. Hallowell, 26 Tex. 475; McCamant v. Batsell, 59 Tex. 364; Raymond v. Cook, 31 Tex. 374; Beard v. Blum, 64 Tex. 61. See, also, Rives v. Stephens (Tex. Civ. App.) 28 S. W. 707.

It is, moreover, true, as insisted by the appellee, that, under the written consent to refer all questions of law and fact to the determination of a particular standing master, the finding of that officer is usually conclusive. Such a consent, entered as an order of the court, is a submission of the controversy to a special tribunal selected by the parties, to be governed by the ordinary rules applicable to the administration of justice in tribunals established by law, and its determinations are not subject to be set aside and disregarded at the mere discretion of the court. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355. This may be done, however, on exceptions showing that the report is unsupported, or essentially defective, but not otherwise. Id. And in passing on exceptions to a master's report the report of the master is received as true, and the exceptions thereto are to be regarded so far only as they are supported by the special statements of the master, or by evidence which must be brought to the attention of the court by reference in the exceptions to the particular testimony relied upon to set the report aside. Harding v. Handy, 11 Wheat. 126; Jaffrey v. Brown, 29 Fed. 479. Here the report of the master makes no special statement of the evidence, and the exceptions offered are assignments of alleged error, unsupported by reference to the evidence as the rule requires. For these reasons we decline to disturb the finding and decree of the circuit court, and a decree of affirmance will be entered.