SANDERS v. VILLAGE OF RIVERSIDE.*

VILLAGE OF RIVERSIDE v. SANDERS.

(Circuit Court of Appeals, Seventh Circuit.   October 7, 1902.)

Nos. 856, 857.

1. QUIETING TITLE—JURISDICTION—EFFECT OF CROSS-BILL.
    The filing of a cross-bill in a suit to quiet title, alleging possession in defendant, and praying that its own title be established and quieted, confers jurisdiction on a court of equity to determine the question of title, as between the parties, and grant relief to the one entitled to the same, although the fact that plaintiff was not in possession would have defeated the jurisdiction upon the original bill.

2. SAME—WAIVER OF OBJECTION TO JURISDICTION.
    A defendant in a suit to quiet title, who stipulates for the trial of the cause before a master, thereby waives the right to insist that a court of equity is without jurisdiction, and that plaintiff's only remedy was at law.

3. EQUITY PRACTICE—CONCLUSIVENESS OF MASTER'S FINDINGS.
    Where, in accordance with a written stipulation of the parties, the whole case is submitted to a master, to find both the law and facts, his findings are conclusive on both parties, except so far as they are excepted to.

4. DEDICATION BY PLAT—CERTAINTY OF DESCRIPTION.
    To constitute a common-law dedication of land to public purposes by means of a plat, the same certainty of description is required as in other forms of conveyance, and the mere coloring, on a plat drawn to a scale of 400 feet to the inch, of a portion along one side of a strip marked as being 30 feet in width, to indicate that the colored portion was to be devoted to park purposes, is not sufficient to constitute a dedication which will defeat a subsequent conveyance of the entire strip, where the coloring was not of uniform width, and there was nothing marked either upon the plat or on the ground by which the width of the intended park portion could be determined with certainty.

Appeal and Cross-Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This suit grew out of the disputed ownership of two strips of land, each 30 feet wide and 4,700 feet long, in Riverside, a suburb of Chicago.   They are adjacent to, parallel with, and separated by, the right of way of a railroad.   Mr. Sanders, a citizen of New York, claims title through mesne conveyances from the Riverside Improvement Company, a corporation that founded Riverside.   The village claims the land as part of its public parks, through an alleged common-law dedication by the improvement company. Private rights of abutting lot owners are not involved, as none of them is a party to this litigation.

In March, 1891, Mr. Sanders filed his bill against the village, alleging that he was the owner and in possession of the land; that the village was asserting an unfounded claim of ownership, and had committed and was threatening to continue acts of trespass and waste, and praying that his title be quieted and the village enjoined, etc.   In April, 1891, the village

* Rehearing denied November 15, 1902.

answered, denying complainant's title and possession, asserting title and possession in itself, and averring that complainant had no right to maintain his bill, because when he filed it he was out of possession, and the land was not vacant and unoccupied. Complainant immediately replied. In December, 1891, by leave of court, the village filed a cross-bill setting up its title and possession, the adverse and unfounded claims of Mr. Sanders, and praying that its title be quieted. Mr. Sanders answered the cross-bill in February, 1892, denying the village's title, but admitting that he was not in possession when he commenced his suit. In March, 1892, the village filed its reply. Between May, 1892, and May, 1894, a large amount of evidence was taken before a notary by agreement of the parties. This evidence was printed and filed on December 12, 1894, and the cause and cross-cause were set for final hearing on the pleadings and proofs on the 17th, but were not heard at that time. In January, 1896, a motion by the village for the dismissal of complainant's bill on the ground that he was not in possession, as shown by his own pleadings, was overruled. February 11, 1896, by agreement, an order was entered that "said cause and cross-cause are by agreement of counsel hereby referred to E. B. Sherman, one of the masters in chancery of this court, to consider the evidence taken herein, and to report to this court his conclusions of fact and of law." The master's report was filed in October, 1900.

In substance, the master found that the improvement company had offered to dedicate the strips in question,—the inner part, adjoining the railroad, as a portion of a park system, and the outer portion as alleys; that the alleys were abandoned, and that Mr. Sanders, under his deed of the entire strips, executed in 1874, was entitled to a decree quieting his title to the alley portions only; "that the improvement company failed to indicate by its acts, or the statements of its officers and agents, the precise and definite location and boundaries of the strips on either side of the right of way of the railroad which it intended to dedicate to public use as a part of the public parks and grounds, except as such locations and boundaries were shown upon its maps (made in 1869 and 1870),—on one map by a part of said strips being colored in green, and on another map by the said part being dotted with dark spots"; "that the master is of the opinion that, although tested by accurate mathematical measurement, the colored part of said strips, as shown upon the maps (drawn on a scale of 400 feet to the inch), is not in all places exactly one-half of the entire strips, and, although said colored part is not exactly of uniform width throughout their entire length, yet an ordinary observer, examining the map to ascertain what part of said strips was colored and what part uncolored, would receive the impression that practically the inner one-half of said strips, lying next to and on both sides of the railroad right of way, was colored, and the outer half thereof uncolored, and that it is made sufficiently certain by said maps that the improvement company intended to dedicate the one-half of said strips lying adjacent to said railroad right of way as a part of the public parks and grounds, and the outer half thereof as public alleys"; that the public and the village accepted the offer of dedication; that from 1885 to 1890 the village cut the grass and weeds on the 30-foot strips; that in 1890 the village planted a row of trees along the center of each strip, and made ditches to mark the boundaries; that the maps fail to state, in words or figures, the respective widths of the park and alley portions of the strips; that no marks have ever been made upon the ground, nor separate possession taken, to indicate what was park and what was alley; that the village was entitled to a decree quieting its title to the inner half of the strips.

With his report the master returned the objections Mr. Sanders had made before him; and by order of court, entered by agreement, these objections were to stand and be treated as exceptions filed before the court. The village filed no objections before the master, nor exceptions before the court. On the hearing of the exceptions the court dismissed both the cause and the cross-cause for want of jurisdiction of the subject-matter.

Mr. Sanders, among other assignments, has presented these: "(1) The court erred in dismissing the said bill for want of jurisdiction. (2) The court erred in refusing to enter a decree in said cause and cross-cause quiet-

ing the title of the complainant as against the village of Riverside to the whole of the two strips of land claimed by complainant in his bill." The village insists that the action of the court below was right; but that, if the dismissal be found erroneous, its title be quieted to the park portions of the strips, and also to the alley portions.

Samuel W. Packard, for Joshua C. Sanders.

Amos C. Miller, for village of Riverside.

Before JENKINS and BAKER, Circuit Judges.

BAKER, Circuit Judge, having made this statement, delivered the opinion of the court.

There can be no question but that the village could have driven Mr. Sanders to an action of ejectment if it had stood upon the proposition that one out of possession cannot maintain an equity suit to quiet title against one in possession. Jackson v. Simmons, 39 C. C. A. 514, 98 Fed. 768. And the objections now urged, that Mr. Sanders came into court with unclean hands, and that a municipality cannot be held as defendant in a suit to quiet title, would have to be considered, if they had been made in time, and had not subsequently been waived. The village, however, filed a cross-bill, in which it set up its own title and possession, and the adverse claims of Mr. Sanders, and asked affirmative relief. "The jurisdiction to relieve the holders of real property from vexatious claims to it, casting a cloud upon their title, and thus disturbing them in its peaceable use and enjoyment, is inherent in a court of equity." Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52. The cross-bill presented a cause that was purely of equitable cognizance. The effect of this was stated accurately, we think, in Cockrell v. Warner, 14 Ark. 346:

"The cross-bill, founded on matters clearly cognizable in equity, supplied any defect in jurisdiction, if any existed, and placed the court in possession of the whole cause, and imposed the duty of granting relief to the party entitled to it. The original bill and cross-bill are but one cause (3 Daniell, Ch. Pl. 1943; Kemp v. Mackrell, 3 Atk. 812; Field v. Schieffelin, 7 Johns. Ch. 252); and it certainly cannot be at all material from what particular source jurisdiction arose, provided it existed in the case."

It is true that the village, about four years after Mr. Sanders admitted in his answer to the cross-bill that he was not in possession when he filed the original bill, and after the evidence had been taken by agreement, printed and filed, and the case set for final hearing, moved that the original bill be dismissed. But the village did not offer to dismiss its cross-bill. In Jackson v. Simmons, supra, this court said:

"A cross-bill which seeks affirmative relief is in the nature of an original bill wherein the cross-complainant is the actor. Such a cross-bill is not dependent upon the original bill, is not subject to the control of the complainant in the original bill, and does not fall with the dismissal of the original bill, whether that dismissal be the act of the complainant or the act of the court."

The circuit court might well have refused to entertain the motion while the village was proposing to hold Mr. Sanders on the cross-bill. But conceding, arguendo, that the motion should have been sustained, the village, after the overruling thereof, made a deliberate

stipulation with Mr. Sanders, entered as a rule of court, that the cause and the cross-cause should be referred to a master to consider the evidence taken, and to report his conclusions of fact and law. The village thus selected its own tribunal,—one competent to pass upon the conflicting claims of title,—and thereafter could not be permitted to assert that its adversary should have resorted to a court of law. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; American Bell Tel. Co. v. Western Union Tel. Co., 16 C. C. A. 367, 69 Fed. 666; Farrar v. Bernheim, 21 C. C. A. 264, 75 Fed. 136; Bosworth v. Hook, 23 C. C. A. 404, 77 Fed. 686. And for the village it may be said that, on the coming in of the master's report, it did not challenge the jurisdiction of the court to decide the merits of the exceptions presented by Mr. Sanders. The court, so far as the record discloses, of its motion dismissed the case, the cause and the cross-cause, at this stage of the proceedings. But the present contention of the village in support of the court's action apparently comes to this: If the tribunal of its own selection found that the village had title to the whole, the case would be a suit in equity; but, if Mr. Sanders were found to have title to any part, the case would be an action at law. This sounds very like the urchin's proposition to match coppers on the basis of, "Heads, I win; tails, you lose."

The village insists that the propriety of the court's action cannot be inquired into because no assignment directly avers "that the court erred in dismissing the cross-bill." We think the assignments quoted in the statement are sufficient. On this record, it was error to dismiss the original bill, and it was error to refuse to rule on the merits of the exceptions.

The parties agreed to a submission of the whole case to a master to find the facts and the law. The finding came into court, conclusive upon both parties, except in so far as they should file exceptions. The village filed no exceptions to the finding that Mr. Sanders was the owner of, and entitled to a decree quieting his title to, the alley parts. The correctness of that conclusion, therefore, is not now in controversy. Farrar v. Bernheim, supra. Under the exceptions of Mr. Sanders, the point, among others, is made that the alleged dedication of the park portions is void for uncertainty. The report and the evidence show that Mr. Sanders has good record title to the whole of the land. The report finds that his record title is cut down by a common-law dedication of one-half of the land for park purposes. His actual title is therefore as broad as his record title, if the purported dedication is void. The maps are on the scale of 400 feet to the inch. The width of the strips is definitely given at 30 feet. The improvement company intended to devote part of the 30 feet to alleys and part to park purposes,—particularly for planting a row of trees to cut off the view of passing trains. The width of neither part was stated on the maps or elsewhere. Nothing was done upon the ground itself to mark the dividing line. On the maps no dividing line, as such, was drawn. On one map the park portion is shown by a green stripe, of varying width, overlying in

part the definite boundary of the 30-foot parcels. On the other map the park portion is indicated "by being dotted with dark spots," supposed to represent the intended row of trees. If the improvement company had gone ahead with its original plans, and had paved 25 feet for alleys, and on the remaining 5 feet had set out a row of trees, it would have established by its acts a definite dividing line, and there is nothing in this record by which its partition of the 30 feet originally intended for devotion to public uses could be impeached. In the absence of a line fixed by the parties, the master established one from his belief that an ordinary observer, looking at the maps, would receive the impression that about one-half was meant to be given for each purpose. A dedication is a mode of conveyance. If the grantor has failed to describe the land, the court cannot do it for him, where reformation is not asked. The rule in Illinois with respect to certainty of description in statutory or in common-law dedication, to be followed by federal courts where Illinois titles are involved (Jackson v. Chew, 12 Wheat. 153, 6 L. Ed. 583), is thus given in Village of Winnetka v. Prouty, 107 Ill. 218:

"To make a good dedication, either under the statute or at the common law, requires a definite and certain description of that which is proposed to be dedicated. * * * An instrument of conveyance ought, upon its face, to show at least enough to enable a competent surveyor to find with absolute certainty that which is assumed to be conveyed."

Also, City of Carlinville v. Castle, 177 Ill. 105, 52 N. E. 283, 69 Am. St. Rep. 212, and City of Edwardsville v. Barnsback, 66 Ill. App. 381. The testimony of the surveyor in this case is not needed to show that it is impossible from the maps "to find with absolute certainty that which is assumed to be conveyed." The variation of a hundredth of an inch, the breadth of a most delicate line, would make a difference of four feet,—nearly a seventh of the whole land, and more than a quarter of what is now in controversy. In Minneapolis & St. L. Ry. Co. v. Incorporated Town of Britt, 105 Iowa, 202, 74 N. W. 934, in holding an alleged dedication void for uncertainty, the court said:

"The only means of knowing the breadth of most of the streets in controversy, and, indeed, the only way in which to determine the exact location or size of any lot or block or alley, is by reference to the scale, which says that the plat is drawn on the basis of one inch to one hundred and twenty feet. Such a reference is too indefinite to constitute the basis for a conveyance of land. The variation of one-twelfth of an inch means a difference of ten feet in the dimensions of a lot or the breadth of a street."

To quote from Attorney General v. Whitney, 137 Mass. 450:

"We are not disposed to abandon the use of language, or to aid in introducing a new method of conveying by colors or pictorial representation independently of it, under a system of legislation which requires all estates or interests in lands, more important than those which are to have the force and effect of those at will only, to be conveyed by instruments in writing."

The decree is reversed, and the cause remanded, with directions to enter a decree quieting title in Mr. Sanders to the land in controversy.